IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LIMA DELTA COMPANY, TRIDENT ) 
AVIATION SERVICES, LLC and )
SOCIÉTÉ COMMERCIALE ET )
INDUSTRIELLE KATANGAISE, )
                                     )
        Plaintiffs, )
                                       )
        v. )    C.A. No. N14C-02-101 JRJ CCLD
                                       )
GLOBAL AEROSPACE, INC., )
NATIONAL INDEMNITY COMPANY, )
AMERICAN ALTERNATIVE )
INSURANCE CORPORATION, TOKIO )
MARINE & NICHIDO FIRE )
INSURANCE COMPANY, LTD. )
(USB), MITSUI SUMITOMO )
INSURANCE COMPANY OF )
AMERICA, AMERICAN COMMERCE )
INSURANCE COMPANY, and )
WELLS FARGO INSURANCE )
SERVICES, USA, INC., )
                                       )
        Defendants. )

## OPINION

Date Submitted: February 12, 2016
Date Decided: February 19, 2016

*Upon Wells Fargo Insurance Services USA, Inc.'s Motion to Stay*: **GRANTED.**

*Upon Defendant Global Aerospace, Inc.'s Motion to Dismiss the Second Amended Complaint*: **GRANTED.**

John S. Spadaro, Esquire, (argued), John Sheehan Spadaro, LLC, Smyrna, DE, Gary L. Evans, Esquire, (*pro hac vice*), Coats & Evans, PC, the Woodlands, TX, Attorneys for Plaintiffs.

Elizabeth A. Sloan, Esquire, Ballard Spahr, LLP, Wilmington, DE, Nancy H. Baughan, Esquire, (*pro hac vice*) (argued), Parker Hudson Rainer & Dobbs LLP, Atlanta, GA, Attorneys for Defendant Wells Fargo Insurance Services USA, Inc.

Timothy J. Houseal, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Attorney for Defendant Mitsui Sumitomo Insurance Company of America.

Seth A. Niederman, Esquire, Fox Rothschild LLP, Wilmington, DE, Jeffrey W. Moryan, Esquire, (*pro hac vice*) (argued), Connell Foley LLP, Roseland, NJ, Attorneys for Defendants Global Aerospace, Inc., National Indemnity Company, American Alternative Insurance Corporation, Tokio Marine & Nichido Fire Insurance Company, LTD. (USB), Mitsui Sumitomo Insurance Company of America, and American Commerce Insurance Company.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court is Defendant Wells Fargo Insurance Services USA, Inc.'s Motion to Stay[1] and Global Aerospace, Inc., National Indemnity Company, American Alternative Insurance Corporation, Tokio Marine & Nichido Fire Insurance Company, Ltd. (USB), Mitsui Sumitomo Insurance Company of America, and American Commerce Insurance Company's (collectively "Insurers") Motion to Dismiss or Stay the Second Amended Complaint.[2]

# II. FACTS

Plaintiffs Lima Delta Company, Trident Aviation Services, LLC, and Société Commerciale et Industrielle Katangaise (collectively "Lima Delta") owned and operated a Gulfstream G-IV aircraft.[3] Lima Delta's representative, Dan Piraino, arranged for Defendant Wells Fargo Insurance Services USA, Inc. ("Wells Fargo") to act as a broker and help secure insurance for the aircraft.[4] After corresponding with Wells Fargo, Defendant Global Aerospace, Inc. ("Global

---

[1] Wells Fargo Insurance Services USA, Inc.'s Motion to Stay ("Wells Fargo's Mot. Stay") (Trans. ID. 57984393).

[2] Opening Brief in Support of Defendant's Motion to Stay or Dismiss the Second Amended Complaint ("Defs.' Mot. Dismiss") (Trans. ID. 55504084).

[3] Lima Delta Company is the registered owner of the aircraft, which it holds as an "owner trustee" for the benefit of Société Commerciale et Industrielle Katangaise. Société Commerciale et Industrielle Katangaise is the equitable owner of the aircraft and used the aircraft in the course of its business providing mining support equipment to the mining industry in the Democratic Republic of Congo ("DRC"). Trident Aviation Services, LLC managed the aircraft for Société Commerciale et Industrielle Katangaise, "providing contract flight crews, scheduling and overseeing maintenance, arranging for flight support services . . . ." Second Amended Complaint for Bad Faith Breach of Contract and Other Relief ¶¶ 4–7 ("Delaware Compl.") (Trans. ID. 55449371).

[4] *Id.* ¶ 16.

Aerospace") issued a Broad Horizon Aviation Insurance Policy ("Policy") to Lima Delta on behalf of National Indemnity Company, American Alternative Insurance Corporation, Tokio Marine & Nichido Fire Insurance Company, Ltd. (USB), Mitsui Sumitomo Insurance Company of America, and American Commerce Insurance Company (collectively "Pool Insurers").[5]

On February 12, 2012, the aircraft touched down at Bukavu Kavumu Airport in the DRC, but, due to a brake malfunction, the aircraft failed to stop and crashed into a ravine.[6] Global Aerospace opened an investigation into the crash, but never issued a written disclaimer of coverage or acknowledged that insurance coverage for the accident existed under the Policy.[7]

### III.  PROCEDURAL HISTORY

Approximately three months after the crash, Global Aerospace filed a Complaint seeking rescission of the Policy in the Superior Court of Georgia ("Georgia Action") pursuant to a contractual right to "issue[] policies on behalf of the Global Aerospace Pool members [including the Pool Insurers] and to bring [] action[s] on their behalf."[8] Global Aerospace alleged that, during the course of its investigation into the crash, it became aware for the first time of misrepresentations

---

[5] *Id.* ¶¶ 18, 22.
[6] *Id.* ¶¶ 40–43.
[7] *Id.* ¶¶ 49–53; *see also* Nov. 19, 2015 Oral Arg. Tr. at 50:18–21 (Trans. ID. 58572467) ("The reason the denial of coverage never came is there was never, and there still has never been, any third-party claims filed against these insurers.").
[8] Defs.' Mot. Dismiss, Ex. A ¶ 2 ("Georgia Compl.").

4

or omissions made to Global Aerospace that were material to the acceptance of the risk.[9] In the alternative, Global Aerospace sought a declaration of no coverage for the accident based on, *inter alia*, the alleged failure of Lima Delta to operate the aircraft with pilots who qualified under the Open Pilot Warranty of the Policy.[10]

Lima Delta, as defendant in the Georgia Action, sought dismissal on the grounds of lack of personal jurisdiction and *forum non conveniens*.[11] Lima Delta did not file the instant Complaint ("Delaware Action") until twenty-one months after the Georgia Action was filed.[12] Upon receipt of Lima Delta's Complaint, the Insurers promptly moved to dismiss the Delaware Action in favor of the first-filed Georgia Action.[13] During the same time period, the Insurers moved for a stay of discovery in the Delaware Action.[14]

Wells Fargo, who is not a party to the Georgia Action, also moved to dismiss the Delaware Action.[15] Among other arguments, Wells Fargo stressed that, unless and until Lima Delta loses its coverage dispute with Insurers, Lima

---

[9] *Id.* ¶¶ 31–66.

[10] *Id.* ¶¶ 67–81.

[11] Delaware Compl. ¶ 50 n.13.

[12] The Georgia Action was filed May 7, 2012. The Delaware Action was filed February 11, 2014.

[13] Global Aerospace moved to dismiss the Delaware Action on April 14, 2014, Motion to Dismiss or Stay the [Amended] Complaint (Trans. ID. 55298350), and re-moved to dismiss again after Lima Delta was permitted to submit a Second Amended Complaint. Defs.' Mot. Dismiss.

[14] Defendants' Motion to Stay Discovery (Trans. ID. 55319965).

[15] Wells Fargo Insurance Services USA, Inc.'s Opening Brief in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint ("Wells Fargo Mot. Dismiss") (Trans. ID. 55590516).

Delta cannot plead a ripe controversy as to Wells Fargo or cognizable damages.

After first consulting the parties and obtaining their consent, the Court contacted Senior Judge Long of the Georgia Superior Court.[16] Thereafter, this Court stayed discovery in the Delaware Action, in favor of discovery proceeding in Georgia, and deferred decision on both motions to dismiss.[17]

In April 2015, the Court held a teleconference to discuss the outstanding motions in the Delaware Action, and the parties agreed that the pending motions to dismiss were ripe for decision.[18] However, ongoing submissions to the Court delayed resolution until the Court explicitly closed the record on the outstanding motions.[19]

Meanwhile, the Georgia Action proceeded, and the Georgia Superior Court granted Global Aerospace's motion for summary judgment on two separate grounds. First, the Georgia Superior Court granted rescission of the Policy, finding: (1) Wells Fargo, as Lima Delta's agent, misrepresented, or omitted, information about the aircraft's operations in the DRC; (2) the misrepresentations were material to the assumption of the risk; and (3) Global Aerospace would not have issued the Policy had it known the truth.[20] Second, the Georgia Superior

---

[16] Judicial Action Form, Aug. 27, 2014 (Trans. ID. 55949132).
[17] Judicial Action Form, Sept. 12, 2014 (Trans. ID. 56025173).
[18] Judicial Action Form, Apr. 27, 2015 (Trans. ID. 57145368).
[19] Court's Aug. 7, 2015 Letter (Trans. ID. 57677092).
[20] Defs.' Sept. 1, 2015 Letter, Ex. Final Judgment and Order on Motions for Summary Judgment at 11 (Trans. ID. 57799236).

6

Court found, in the alternative, that the Policy does not apply to the crash because Lima Delta's pilots did not meet the Open Pilot Warranty contained in the Policy.[21]

Prior to oral argument on the motions *sub judice*, Wells Fargo submitted a Motion to Stay in lieu of its previously filed Motion to Dismiss.[22]

Although issues of claim and issue preclusion have surfaced in light of the decision issued in the Georgia Action, those issues have not been briefed or argued in the Delaware Action. For this reason, and because the summary judgment decision issued in the Georgia Action is still on appeal, the Court will rule on the instant motions on the grounds upon which they were briefed.[23]

## IV. STANDARD OF REVIEW

When evaluating whether a suit filed in a Delaware court should be stayed or dismissed in favor of an action filed in another forum, Delaware courts apply several different standards, depending on the circumstances. Generally, the plaintiff's choice of forum is entitled to deference.[24]

If the Delaware action is first-filed, the burden is on the defendant moving to dismiss on the grounds of *forum non conveniens* to establish "with particularity that they will be subjected to overwhelming hardship and inconvenience if required

---

[21] *Id.* at 15–21.
[22] Wells Fargo's Mot. Stay.
[23] *Briddell v. Hanuschak*, 2015 WL 3649591, at *2 (Del. Ch. 2015) (noting that the party's *McWane* analysis was now moot because a final *unappealable* judgment had been entered in another court and therefore it was no longer "pending") (emphasis added).
[24] *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. 2010).

to litigate in Delaware."[25] If the Delaware action is not the first-filed action, as is the case here, "the policy that favors strong deference to a plaintiff's initial choice of forum requires the court freely to exercise its discretion in favor of staying or dismissing the Delaware action" ("*McWane* doctrine").[26] The traditional *forum non conveniens* analysis and the *McWane* doctrine "operate consistently and in tandem to discourage forum shopping and promote the orderly administration of justice."[27] *McWane* is the applicable standard here.

Although the *McWane* doctrine disfavors later-filed Delaware suits, a stay or dismissal in favor of the first-filed action is not a matter of right.[28] When a party moves to stay or dismiss a later-filed Delaware suit, the Court must consider whether there is a prior pending action in another jurisdiction that involves the same parties and issues and whether the other jurisdiction's courts are capable of delivering prompt and complete justice.[29] These factors, as well as all other pertinent facts and circumstances, are balanced against "the possibility of inconsistent and conflicting rulings if both actions are permitted to proceed at the

---

[25] *Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1047 (Del. 2010) (quoting *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1199 (Del. 1997)).
[26] *Id.* (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970)) (emphasis omitted).
[27] *Id.*
[28] *Baks v. CenTra, Inc.*, 1994 WL 555466, at *2 (Del. Super. 1994).
[29] *Mine Safety Appliances Co. v. AIU Ins. Co.*, 2011 WL 300252, at * 4 (Del. Super. 2011) (citing *McWane*, 263 A.2d at 283).

same time."[30]

## V. DISCUSSION

### A. Insurers' Motion to Dismiss

#### 1. Prior Pending Action in Another Jurisdiction

Although the Georgia Action was filed twenty-one months before the Delaware Action, Lima Delta maintains that the Georgia Action should not be treated as a first-filed action. In support of this proposition, Lima Delta relies on cases involving "contemporaneously" filed actions.

When two competing actions are filed in close succession, the Court "takes into account the circumstances surrounding the filing of the actions to determine if the first-filed action should be given great deference."[31] When the Court determines that the first-filed action should not be given great deference, the Court treats the competing actions as "contemporaneously" filed.[32] "This approach to actions filed close in time discourages so-called 'races to the courthouse.'"[33] However, competing actions filed within a short period of time will not always be deemed "contemporaneously" filed. For example, if a second action appears to be

---

[30] *Id.*

[31] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *2 (Del. Super. 2014) (internal citations omitted).

[32] Delaware courts have found that suits filed within a few hours, or within a few days, were contemporaneously filed. *See BP Oil*, 2010 WL 702382, at *2 n. 19 (listing cases found to be contemporaneously filed).

[33] *Id.* at *2 (citing *Texas Instruments, Inc. v. Cyrix Corp.*, 1994 WL96983, at *3–4 (Del. Ch. 1994))

merely *reactive*, the first-filed action may still be afforded great deference, regardless of how expeditiously the second action was filed.[34] Ultimately, "[t]he granting of a motion to stay or dismiss a Delaware Action in favor of a foreign action is not a matter of right, but rests within the sound discretion of the court."[35]

Lima Delta argues that this case is similar to *National Union Fire Insurance Company. v. Turner Construction Company*[36] and *Playtex, Inc. v. Columbia Casualty Company*.[37] The basic facts of *National Union*[38] and *Playtex*[39] are

---

[34] *Dura Pharm., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 929 (Del. Ch. 1998) ("The fact that the two complaints were filed within one business day of one another is not an indication of independent decisionmaking, as in [*Cyrix*, 1994 WL 96983], but merely a testament to Dura's alacrity in responding to Scandipharm's choice of Alabama as the forum for this litigation. Neither *Cyrix* nor the other cases cited by Dura suggest that, in the absence of other, special circumstances, a second-filed, *reactive* Delaware action will succeed in ousting a foreign plaintiff of its choice of forum simply by the speed with which it is filed. Indeed, such a rule would undermine the very considerations of comity and efficiency on which the general rule of *McWane* is based, by encouraging a 'race' to file responsive or reactive complaints.") (emphasis in original).

[35] *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *3 (Del. Ch. 2009) (citing *In re Bear Stearns Cos. S'holder Litig.*, 2008 WL 959992, at *5 (Del. Ch. 2008)).

[36] 2014 WL 703808 (Del. Super. 2014).

[37] 1989 WL 40913 (Del. Super. 1989).

[38] In *National Union*, National Union Fire Insurance Company issued an umbrella liability insurance policy that named Turner Construction Company and 5th Rock, LLC ("Turner and 5th Rock") as insureds in connection with a construction project both worked on. Turner and 5th Rock were later sued by the owner of the project for allegedly defective construction. National Union issued a reservation of rights letter to Turner and 5th Rock and, shortly thereafter, National Union filed an action in Delaware seeking a declaratory judgment that it did not have a duty to defend, indemnify, or provide coverage to Turner or 5th Rock for the claims in the underlying defective construction case. Nine days later, Turner and 5th Rock filed a competing suit in California and sought to have National Union's first filed suit stayed or dismissed. After a thorough review of the relevant facts and law, the Court concluded that the first-filed Delaware suit should not be afforded great deference. 2014 WL 703808, at *1–4.

[39] In *Playtex*, Columbia Casualty Insurance Company ("Columbia") issued an excess layer insurance policy which named Playtex, Inc. as an insured. Multiple lawsuits were filed against Playtex alleging that its product caused Toxic Shock Syndrome. Columbia issued Playtex a reservation of rights letter, and, shortly thereafter, Columbia filed an action in Illinois seeking a

similar: anticipating a lawsuit from its insured, an insurance company filed a declaratory judgment action, prompting the insured to immediately file a competing action. In both cases, the Court declined to afford the insurer's first-filed, anticipatory suit great deference. Further, in both *Playtex* and *National Union*, the Court underscored its reluctance to afford deference to defensive declaratory judgment actions, seemingly filed for the purposes of forum shopping.[40] In recognition of this, the Court in *Chemtura Corp. v. Certain Underwriters at Lloyd's* explained, "[a]n action by the insurer, filed in anticipation of a claim for damages by the insured, *generally* would not be entitled to first-filed deference."[41]

Lima Delta cites *National Union* and *Playtex* as authority to support its conclusion that Global Aerospace's "anticipatory, defensive filing" in the Georgia Action should not be afforded deference, and the Court should evaluate Insurers' Motion to Dismiss or Stay under traditional *forum non conveniens* factors.[42] The

---

declaratory judgment of its rights and obligations under the policy at issue. Thirteen days later, Playtex filed a competing suit in Delaware and asked the Court not to stay or dismiss the Delaware case. After a thorough review of the relevant facts and law, the Court concluded that the first-filed Illinois suit should not be afforded great deference. 1989 WL 40913, at *1–5.

[40] *Playtex*, 1989 WL 40913, at *4 (citing *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 194 A.2d 43 (Del. Ch. 1963), *aff'd*, 198 A.2d 681 (Del. 1964)); *National Union*, 2014 WL 703808, at *3 (quoting *E-Birchtree, LLC v. Enterprise Products Operating, L.P.*, 2007 WL 914644, at *5 (Del. Super. 2007)) ("Delaware courts take a 'rather dim view of declaratory judgment claims of non-breach made for purposes of forum shopping.'").

[41] 2015 WL 5340475, at * 4 (Del. Super. 2015) (citing *National Union*, 2014 WL 703808, at *3)).

[42] As characterized by Lima Delta: Global Aerospace, in collusion with Wells Fargo, misled Lima Delta by providing assurances that the investigation of the accident was proceeding

11

critical fact left out of Lima Delta's argument is the significant lapse in time between the filing of the Georgia Action and the filing of the Delaware Action. In both *National Union* and *Playtex*, the insured *promptly* filed a competing action.[43] These cases are wholly distinguishable from the instant case for this reason.

Lima Delta also cites *Household International, Inc. v. Eljer Industries, Inc.*,[44] in support of the proposition that the Delaware Action is the "legitimately first filed case."[45] Essentially, Lima Delta argues that, because Lima Delta has connections to Delaware, this Court should consider "the powerful and intensive state interest in making sure that Delaware courts are available to Delaware citizens."[46] Lima Delta's argument is misplaced. In *Household International*, the Court of Chancery discussed the applicability of full faith and credit concerns in the context of whether a later-filed suit in another forum should be enjoined.[47] It is

_____

normally. Anticipating litigation, Global Aerospace defensively filed the Georgia Action, thereby winning a "unilateral" race to the courthouse and unfairly depriving Lima Delta of its choice of forum. The anticipatory, defensive nature of the Georgia Action is further evidenced, according to Lima Delta, by the fact that Lima Delta is the insured and, therefore, the "natural plaintiff" in an insurance coverage dispute. Thus, Lima Delta concludes, the Georgia Action is not legitimately first-filed and should not be entitled to deference. Plaintiffs' Answering Brief in Opposition to Insurers' Motion to Dismiss at 21–22 ("Pls.' Resp. Mot. Dismiss") (Trans. ID. 55605426); Pls.' Nov. 16, 2015 Letter (Trans. ID. 58170089).

[43] In *National Union*, the Court found that it was a "close question" whether competing actions filed nine *days* apart were contemporaneously filed. It was only after "[t]aking into account the natural alignment of the parties and the appearance of anticipatory filing," that the Court determined that it would not give great deference to the first-filed action. 2014 WL 703808, at *4.

[44] 1993 WL 133065 (Del. Ch. 1993).

[45] Nov. 19, 2015 Oral Arg. Tr. at 29:18–31:2.

[46] *Id.*

[47] *Household Int'l*, 1993 WL 133065, at *3.

12

not relevant to this case.

Twenty-one months passed between the filing of the Georgia Action and the filing of the Delaware Action. The Georgia Action is the first-filed suit, and it is entitled to deference on this basis.

### 2. The Same Parties and the Same Claims

It is rare for the parties and issues in competing litigations to be exactly identical.[48] Given that:

> [T]he "same parties, same issues" analysis focuses on substance over form . . . Instead, the cases examine whether the ultimate legal issues to be litigated will be determined in the first-filed action, and thus, require only a showing of "[s]ubstantial or functional identity" of the parties and issues.[49]

All of the plaintiffs in the Delaware Action, as well as Global Aerospace, are parties in the Georgia Action.[50] Although the Pool Insurers are not named parties

---

[48] *Choice Hotels Int'l, Inc. v. Columbus-Hunt Park DR. BNK Inv'rs, L.L.C.*, 2009 WL 3335332, at *7 (Del. Ch. 2009) (citing *Xpress Mgmt. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741, at *4 (Del. Ch. 2007)).

[49] *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *4 (Del. Ch. 2005) (alteration in original) (citing *AT & T Corp. v. Prime Security Distrib., Inc.*, 1996 WL 633300, at *2 (Del. Ch. 1996)); *see also id.* (citing *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at *6 (Del. Ch. 1996); *Harbor Fin. Partners v. Sunshine Mining & Ref. Co.*, 1996 WL 74728, at *4 (Del. Ch. 1996); and *AT&T Corp. v. Prime Sec. Distributors, Inc.*, 1996 WL 633300, at *3 (Del. Ch. 1996)) ("[T]he 'same parties' requirement has been met by 'related entities,' somewhat overlapping parties, and persons in privity with the parties.").

[50] The Georgia Action was brought against various derivations of names associated with the Delaware Plaintiffs, including the proper names of two of the Plaintiffs, Lima Delta Company and Trident Aviation Services, LLC, but not Société Commerciale et Industrielle Katangaise. This confusion stems from a discrepancy between the named insureds on the Policy and the legal entities claiming to be insureds. *See* Georgia Compl. ¶¶ 9–10. Société Commerciale et Industrielle Katangaise has since been added as a defendant to the Georgia Action. Defs.' Mot. Dismiss at 4.

13

in the Georgia Action, Global Aerospace brought the Georgia Action on their behalf pursuant to a contractual right.[51] The only party to the Delaware Action who is not named or represented in the Georgia Action is Wells Fargo. However, it is evident from Lima Delta's Second Amended Complaint that, although factually intertwined, the dispute between Lima Delta and Wells Fargo is contingent upon the resolution of the dispute between Lima Delta and the Insurers.[52] (For example, it is unclear whether Lima Delta can establish any damages unless and until Lima Delta definitively loses its claim for insurance coverage). Therefore, the parties to the Georgia Action and the Delaware Action are functionally identical.[53]

In determining whether the issues in competing actions are substantially or functionally identical, Delaware courts look to whether the disputes arise from a common nucleus of operative facts.[54] The nucleus of operative facts in this case is

---

[51] Georgia Compl. ¶ 2.

[52] *See, e.g.*, Delaware Compl. ¶ 102 ("*In the event that the insurers succeed in avoiding coverage . . .* ") (emphasis added).

[53] Although Wells Fargo is not a party to the Georgia Action, the Wells Fargo office that procured insurance for Lima Delta is located in Atlanta and has been subject to discovery in the Georgia Action. *See* Defs.' Mot. Dismiss at 8 ("[Lima Delta has] participated in and utilized Georgia's third party discovery practice within the Georgia Action, independently obtaining over 15,000 pages of documents from Wells Fargo."). Nothing prevented Lima Delta from joining Wells Fargo to the Georgia Action. *See Kurtin*, 2005 WL 1200188, at *4 (citing *Macklowe v. Planet Hollywood, Inc.*, 1994 WL 586835, at *3 (Del. Ch. 1994) ("Our courts also have held the parties in competing actions to be 'substantially identical' where differences in the parties involved can be remedied by joinder.").

[54] *Choice Hotels*, 2009 WL 3335332, at *7 (citing *Davis Int'l, LLC v. New Start Grp. Corp.*, 2005 WL 2899683, at *2 (Del. Ch. 2005)); *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 1995 WL 1312656, at *5 (Del. Super. 1995) ("Delaware courts, however, have recognized that

the issuance of the Policy by Global Aerospace to Lima Delta through Wells Fargo. Therefore, the issues in the Georgia Action and the Delaware Action are substantially the same.

### 3. Capable of Rendering Prompt and Complete Justice

"Rendering justice entails accurately applying controlling law as well as ensuring that all parties necessary to a complete resolution are joined (or can be joined by service of process) in a competing action."[55] Georgia is capable of rending prompt and complete justice in this case.

### 4. Balancing the *McWane* Factors, and Principles of Comity, Against the Possibility of Inconsistent and Conflicting Rulings if Both Actions are Permitted to Proceed Simultaneously

As discussed above, the *McWane* factors favor a stay or dismissal in this case. It would be a "wasteful duplication of time, effort, and expense" if Insurers are forced to continue litigating in Delaware.[56] Moreover, given the advanced stage of the Georgia Action—both now and at the time the Delaware Action was

---

all claims arising from a common nucleus of operative facts should be brought in the same court at the same time whenever possible.").

[55] *Brookstone Partners Acquisition XVI, LLC v. Tanus*, 2012 WL 5868902, at *6 (Del. Ch. 2012); *see Willis v. PCA Pain Ctr. of Virginia, Inc.*, 2014 WL 5396164, at *7 (Del. Ch. 2014) ("Cases that fail to meet this *McWane* factor often deal with important or unsettled issues of Delaware law or the internal affairs of Delaware corporations."); *Kurtin*, 2005 WL 1200188, at *4 (citing *Joyce v. Cuccia*, 1996 WL 422339, at *5 (Del. Ch. 1996); *In re IBP, Inc.*, 2001 WL 406292, at *8–9 (Del. Ch. 2001); *Oralco, Inc. v. Bradley*, 1992 WL 332106, at *4 (Del. Ch. 1992)) ("Courts have questioned the foreign court's ability to render prompt and complete justice where a trial was to be delayed pending a judicial election, where the suit involved contract claims governed by a forum selection clause mandating adjudication in Delaware, and where the Delaware action involved a summary proceeding under the Delaware General Corporation Law.").

[56] *McWane*, 263 A.2d at 283.

15

filed—comity would be poorly served by allowing the Delaware Action to continue.

Finally, there is a possibility of inconsistent and conflicting rulings. For example, Lima Delta has strenuously argued that Delaware choice of law analysis would produce a different result than the Georgia Superior Court's determination that Georgia law applies.[57]

The Court finds that dismissal, rather than a stay, is warranted in this case. Insurers' Motion to Dismiss is therefore **GRANTED.**

## B. Wells Fargo's Motion to Stay

Following the Superior Court of Georgia's issuance of its Final Judgment and Order on Motions for Summary Judgment, Wells Fargo submitted the instant Motion to Stay to be considered in lieu of its previously filed Motion to Dismiss. Wells Fargo requests that this case be stayed until a non-appealable final judgment is entered in the Georgia Action.

Because Wells Fargo is not a party to the Georgia Action, the foregoing reasons compelling a stay or dismissal as to Insurers are not uniformly applicable to Wells Fargo. That said, however:

> The power to grant a stay is soundly within the court's discretion and may be properly asserted on the ground that another action is pending in a different jurisdiction, even though not between the same parties and even though the issues are not identical in all respects, *where that*

---

[57] *See* Pls.' Resp. Mot. Dismiss at 25–29.

*other action will probably settle or greatly simplify the issues presented.*[58]

When determining whether to grant a stay in a particular case, "[t]he major considerations . . . are the economy of judicial effort, the efficiency of the administration of justice, and the prevention of unwarranted delay."[59]

The controversy between Global Aerospace and Lima Delta centers on Global Aerospace's issuance of the Policy to Lima Delta. As the insurance broker, Wells Fargo was the middleman, and resolution of the controversy, if any, between Lima Delta and Wells Fargo, is largely contingent upon resolution of the Georgia Action. Wells Fargo's now deferred Motion to Dismiss is largely premised on this fact.[60]

Although Wells Fargo is not a party to the Georgia Action, it has nevertheless been subject to substantial discovery in Georgia.[61] The ability of Lima Delta to obtain discovery from Wells Fargo was specifically addressed when this Court reached out to Senior Judge Long of the Georgia Superior Court, and the

---

[58] *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 1509103, at *5 (Del. Super. 2009) (citing *Lanova Corp. v. Atlas Imperial Diesal Engine Co.*, 64 A.2d 419, 420 (Del. Super. 1949)) (internal quotation marks omitted) (emphasis added).

[59] *Baks*, 1994 WL 555466, at *2 (citing *Palmer v. Palmer*, 409 A.2d 1050, 1052 (Del. 1979)).

[60] At the time the Motion to Dismiss was filed, Wells Fargo argued: "Plaintiffs' claims are purely conjectural and based entirely on the resolution of issues currently pending before the Georgia Superior Court: '*in the event that*' coverage is found not to exist under the policy at issue; '*to the extent that*' [Global Aerospace's] assertions in the Georgia action are proven; *then* Plaintiffs contend they are entitled to recover damages from Wells Fargo in Delaware." Wells Fargo's Mot. Dismiss at 1 (quoting Delaware Compl.).

[61] *See, e.g.*, Defs.' Mot. Dismiss at 8 ("[Lima Delta has] participated in and utilized Georgia's third party discovery practice within the Georgia Action, independently obtaining over 15,000 pages of documents from Wells Fargo.").

Georgia Superior Court agreed that Lima Delta's ability to obtain discovery from Wells Fargo would not be limited or restricted based solely on the fact that Wells Fargo is not a party to the Georgia Action. At this stage, Lima Delta has had the benefit of discovery not only from Wells Fargo, but from Global Aerospace as well. For example, fifty-three days of depositions of thirty-two different witnesses were taken in the Georgia Action.[62] For the Delaware Action to proceed, Wells Fargo may need to duplicate much, or all, of this discovery.[63]

Until the Georgia Action reaches a final, non-appealable resolution, there is a substantial risk that the parties and the Court's resources will be wasted or used inefficiently resolving issues between Lima Delta and Wells Fargo that may be narrowed, clarified, or rendered moot by the Georgia Action.

Wells Fargo's Motion to Stay is therefore **GRANTED.**

---

[62] Nov. 19, 2015, Oral Arg. Tr. at 6:20–21.

[63] *Id.* at 59:10–18. ("Four Wells Fargo current or former employees were deposed, so that's happened as it relates to Wells Fargo. But as to the other . . . 28 witnesses who were deposed, we weren't there. We haven't had the opportunity to ask a single question of any of those witnesses.").

## VI.  CONCLUSION

For the foregoing reasons, Global Aerospace, Inc., National Indemnity Company, American Alternative Insurance Corporation, Tokio Marine & Nichido Fire Insurance Company, Ltd. (USB), Mitsui Sumitomo Insurance Company of America, and American Commerce Insurance Company's Motion to Dismiss the Second Amended Complaint is **GRANTED**, and Wells Fargo Insurance Services USA, Inc.'s Motion to Stay is **GRANTED.**

**IT IS SO ORDERED.**

_____
Jan. R. Jurden, President Judge

19