# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ENVEN ENERGY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0579-KSJM |
| | ) | |
| DAVID M. DUNWOODY, JR, AND | ) | |
| OILFIELD PIPE OF TEXAS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 6, 2020
Date Decided: May 28, 2020

Kevin M. Coen, Sara Toscano, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Paul Spagnoletti, Antonio J. Perez-Marques, Matthew Cormack, DAVIS POLK & WARDWELL LLP, New York, New York; *Counsel for Plaintiff Enven Energy Corporation.*

Brock E Czeschin, Angela Lam, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Robin C. Gibbs, Anthony N. Kaim, Angus Dodson, Gabriel D. Kaim, GIBBS & BRUNS LLP, Houston, Texas; *Counsel for Defendant David M. Dunwoody, Jr.*

Daniel C. Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware; *Counsel for Defendant Oilfield Pipe of Texas, LLC.*

**McCORMICK, V.C.**

The plaintiff company alleges that the defendant, its former president, guaranteed the company's business to a third-party vendor in exchange for kickbacks to the former president's father. The complaint asserts claims for breach of fiduciary duty and equitable fraud against the former president, who has moved to dismiss the action for improper venue. The former president argues that a forum selection clause in his employment agreement with the company requires that the claims asserted in this litigation be adjudicated in Texas. Alternatively, he argues that the case should be dismissed or stayed in favor of a prior action he filed against the company in Texas for breach of the employment agreement. This decision finds that the forum selection clause in the employment agreement does not strip this Court of venue over the plaintiff's claims, but it is an appropriate exercise of discretion to grant a stay pending resolution of the first-filed Texas action.

## I.     FACTUAL BACKGROUND

The background is drawn from the First Amended Verified Complaint (the "Amended Complaint") and the documents it incorporates by reference.[1]

### A.     The Alleged Scheme

Plaintiff EnVen Energy Corporation ("EnVen") extracts and produces oil, gas, and related hydrocarbons in the Gulf of Mexico. Defendant David M. Dunwoody,

---

[1] C.A. No. 2019-0579-KSJM, Docket ("Dkt.") 55, First Am. Verified Compl. ("Am. Compl.").

Jr., co-founded EnVen in 2014. Dunwoody assumed the role of President and maintained that position until he resigned in June of 2019.

EnVen alleges that Dunwoody engaged in a self-dealing scheme whereby he guaranteed EnVen's business to Defendant Oilfield Pipe of Texas, LLC ("Oilfield") in exchange for kickbacks to his father totaling more than $475,000. EnVen further alleges that Dunwoody failed to disclose his father's financial interest in Oilfield and "took steps to perpetuate and protect" EnVen's relationship with Oilfield.[2] Through this scheme, Oilfield "often received business without a competitive bidding process, resulting in EnVen paying higher prices."[3] Oilfield eventually became EnVen's near-exclusive pipe vendor, with sales to EnVen in excess of $16 million.

### B.    The Texas Action

On June 7, 2019, Dunwoody sued EnVen in the District Court of Harris County, Texas (the "Texas Action").[4] In the Texas Action, Dunwoody claims that he exercised his right to terminate his employment agreement with EnVen (the "Employment Agreement")[5] for "Good Reason," which entitled him to certain

---

[2] *Id.* ¶ 24.

[3] *Id.* ¶ 30.

[4] Dkt. 19, Transmittal Aff. of Angela Lam in Supp. of Def. David M. Dunwoody, Jr.'s Opening Br. in Supp. of the Mot. to Dismiss the Verified Compl. or to Stay Proceedings ("First Lam Aff.") Ex. 1.

[5] First Lam Aff. Ex. 2.

benefits.[6]  Dunwoody further claims that EnVen wrongfully treated the termination as a resignation and denied him benefits under the Employment Agreement.[7]

In EnVen's original answer to Dunwoody's complaint in the Texas Action,[8] EnVen stated that Dunwoody terminated the Employment Agreement not for "Good Reason," but rather because "he simply could not handle anyone . . . questioning his methods or decisions."[9]  The original answer asserted a variety of affirmative defenses, including that Dunwoody breached the Employment Agreement and that Dunwoody's claim was barred by the doctrines of unjust enrichment and unclean hands.[10]  It also included a paragraph concerning facts at issue in this litigation:

> What's more, Dunwoody failed to abide by the most basic requirement of his job as President—his duty of loyalty to EnVen.  Over a period of years, Dunwoody failed to disclose to EnVen's Board of Directors . . . that his father . . . was enriching himself at EnVen's expense as a consultant of one of EnVen's significant vendors, [Oilfield]. . . .  That knowing deception by Dunwoody is the subject of a separate action the Company has commenced in [the Delaware Court of Chancery] today against Dunwoody for fraud and breach of his duty of loyalty.[11]

---

[6] First Lam Aff. Ex. 1 ¶ 39.

[7] *Id.* ¶ 33.

[8] First Lam Aff. Ex. 3.

[9] *Id.* ¶ 7.

[10] *Id.* ¶¶ 19, 24.

[11] *Id.* ¶ 5.

On August 22, 2019, Dunwoody amended his complaint in the Texas Action,[12] and EnVen answered the amended complaint on September 16, 2019.[13] By the time EnVen answered the amended complaint, Dunwoody had already filed in this action a dismissal brief arguing that there is substantial overlap between the Texas Action and this litigation.[14] In its answer to the amended complaint, EnVen reiterated its previously asserted affirmative defenses but removed the paragraph block-quoted above concerning the alleged Oilfield scheme.[15]

### C.    This Litigation

On July 26, 2019, EnVen commenced this litigation, asserting claims against Dunwoody for breach of the fiduciary duty of loyalty and equitable fraud.[16] On September 13, 2019, Dunwoody moved to dismiss the initial complaint or stay the proceedings in favor of the Texas Action.[17] Briefing on the initial motion to dismiss

---

[12] *See generally* First Lam Aff. Ex. 5.

[13] Dkt. 36, Transmittal Aff. of Angela Lam in Supp. of Def. David M. Dunwoody, Jr.'s Reply Br. in Further Supp. of His Mot. to Dismiss the Verified Compl. or to Stay Proceedings ("Second Lam Aff.") Ex. 7.

[14] Dkt. 18, Def. David M. Dunwoody, Jr.'s Opening Br. in Supp. of the Mot. to Dismiss the Verified Compl. or to Stay Proceedings ("Def.'s Opening Br.") at 12–15 (filed on September 13, 2019 and arguing that "[t]he Texas Action involves the same issues as the Delaware Action").

[15] *See* Second Lam Aff. Ex. 7.

[16] Dkt. 1, Verified Compl.

[17] Dkt. 17, Def. David M. Dunwoody, Jr.'s Mot. to Dismiss.

was completed by October 29, 2019,[18] and the Court held oral argument on January 16, 2020.[19]

On January 31, 2020, EnVen amended its complaint to add Oilfield as a defendant to claims for aiding and abetting breach of fiduciary duty and equitable fraud. The Amended Complaint asserts four Counts:

- Count I for breach of the fiduciary duty of loyalty against Dunwoody;

- Count II for equitable fraud against Dunwoody;

- Count III for aiding and abetting breach of the fiduciary duty of loyalty against Oilfield; and

- Count IV for aiding and abetting equitable fraud against Oilfield.

On February 11, 2020, counsel requested that the Court defer ruling on the initial motion to dismiss while EnVen and Dunwoody discussed the need for supplemental briefing, given the filing of the Amended Complaint.[20] On February 6, 2020, Dunwoody filed a motion to dismiss the Amended Complaint or to stay proceedings in favor of the Texas Action.[21] By stipulation, the parties agreed to

---

[18] Def.'s Opening Br.; Dkt. 31, Pl. EnVen Energy Corporation's Answering Br. in Opp'n to Def.'s Mot. to Dismiss Verified Compl. or to Stay Proceedings ("Pl.'s Ans. Br."); Dkt. 35, Def. David M. Dunwoody, Jr.'s Reply Br. in Further Supp. of his Mot. to Dismiss the Verified Compl. or to Stay Proceedings.

[19] Dkt. 58, Tr. of Oral Arg. on Def.'s Mot. to Dismiss Verified Compl. or Stay Proceedings ("Oral Arg. Tr.").

[20] Dkt. 59.

[21] Dkt. 62, Def. David M. Dunwoody, Jr.'s Mot. to Dismiss the First Am. Verified Compl. or to Stay Proceedings.

preserve the arguments set forth in briefing on the initial motion to dismiss and to submit supplemental briefing in connection with the second motion.[22] Supplemental briefing was completed by March 6, 2020.[23] To date, Oilfield has neither filed a motion to dismiss nor filed an answer in this matter.

## II.  LEGAL ANALYSIS

Dunwoody has moved to dismiss the Amended Complaint pursuant to Court of Chancery Rule 12(b)(3) for improper venue.  "Even if a court has jurisdiction over the subject matter of a dispute, an action still may be dismissed under Rule 12(b)(3) if that court is not the proper venue for resolving that dispute."[24]  Under Rule 12(b)(3), "the court 'is not shackled to the plaintiff's complaint' and 'is permitted to consider extrinsic evidence from the outset.'"[25]  Courts may dismiss or stay a matter under Rule 12(b)(3) "in deference to a first-filed case in a different

---

[22] Dkt. 61, Stipulation and Order Extending Time to Answer, Move, or Otherwise Plead and Schedule for Supplemental Briefing.

[23] Dkt. 63, Def. David M. Dunwoody Jr.'s Opening Suppl. Br. in Supp. of his Mot. to Dismiss the First Am. Verified Compl. or to Stay Proceedings ("Def.'s Opening Suppl. Br."); Dkt. 66, Pl. EnVen Energy Corporation's Suppl. Answering Br. in Opp'n to Def.'s Mot. to Dismiss First Am. Verified Compl. or to Stay Proceedings; Dkt. 72, Def. David M. Dunwoody, Jr.'s Reply Suppl. Br. in Further Supp. of his Mot. to Dismiss the First. Am. Verified Compl. or to Stay Proceedings ("Def.'s Suppl. Reply Br.").

[24] *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009).

[25] *Luchi v. Luchi*, 2020 WL 1274879, at *4 n.23 (Del. Ch. Mar. 17, 2020) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)).

jurisdiction" under the well-settled *McWane* doctrine.[26]  Because a valid forum

selection clause can preempt the application of *McWane*,[27] this analysis first

evaluates the effect of the Texas forum selection clause.

**A.**     **The Forum Selection Clause in the Employment Agreement Does Not Strip This Court of Venue.**

Dunwoody argues that the Amended Complaint should be dismissed based on

the forum selection provision in the Employment Agreement, which requires that

"[a]ny lawsuit that may be brought by either party involving the enforcement of this

Agreement or the rights, duties, or obligations of this Agreement . . . be brought

exclusively in the state district or federal courts sitting in Harris County, Texas."[28]

Dunwoody argues that this language subjects EnVen's claims in this litigation to the

exclusive venue of Texas courts.

Although it is generally true that "[f]orum selection clauses can be applied not

only to contract-based claims but also tort claims arising out of, or depending upon,

---

[26] *PPL Corp. v. Riverstone Hldgs. LLC*, 2019 WL 5423306, at *6 (Del. Ch. Oct. 23, 2019) (citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970)).

[27] *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010) ("[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result.").

[28] Employment Agreement § 19 (emphasis added).

the contractual relationship in question,"[29] the forum selection provision in the Employment Agreement limits its application to contractual claims. The relevant limiting phrase is as follows: "involving the enforcement *of this Agreement* or the rights, duties, or obligations *of this Agreement*."[30] This language encompasses only "claims directly pertaining to rights based on the contract at issue" and does not cover tort or other claims that merely "touch on" or relate to the contract.[31] Because the claims asserted against Dunwoody in this action derive from common law[32] and

---

[29] *Ashall Homes Ltd. v. ROK Entm't Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (collecting cases).

[30] Employment Agreement § 19 (emphasis added).

[31] *ASDC Hldgs., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011) (comparing a forum selection provision that required the parties to bring "[a]ll actions to enforce or seek damages, specific performance or other remedy for the alleged breach *of this Agreement*" in Delaware with a forum selection provision requiring the parties to bring "any claim or cause of action *arising under or relating to this Agreement*" in Delaware and concluding that the former was "narrow in scope and, therefore, only applied to claims directly pertaining to rights based on the contract at issue" while the use of the phrase "arising under or relating to this Agreement" in the latter indicated that it was a "broad forum selection clause" encompassing "any issues that '*touch on* contract rights or contract performance'" (citing *El Paso Nat. Gas Co. v. Transamerican Nat. Gas Corp.*, 1994 WL 248195, at *1 (Del. Ch. May 31, 1994); *Parfi Hldg. AB v. Mirror Image Internet*, 817 A.2d 149, 155 (Del. 2002))); *cf. Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089, at *12 n.103 (Del. Ch. Oct. 11, 2012) (applying the reasoning in *ASDC Holdings* but finding that the forum selection clause at issue, which covered "*any proceeding* with respect to this . . . Agreement," was a broad one (emphasis added)); *see also* John F. Coyle, *Interpreting Forum Selection Clauses*, 104 Iowa L. Rev. 1791, 1851 tbl. 1 (2019) (suggesting that "[i]f the goal is to give the clause a *broad scope*, state that the clause shall apply to all claims 'relating to' the contract or the parties' relationship" and also suggesting, "[i]f the goal is to give the clause a *narrow scope*, state that the clause shall only apply to 'contract claims' or to claims 'arising out of the alleged breach of this agreement'" (emphases added)).

[32] *Brown v. T-Ink, LLC*, 2007 WL 4302594, at *15 (Del. Ch. Dec. 4, 2007) (fiduciary duty claims "arise from general fiduciary principles under Delaware law"); *Metro Commc'ns*

8

do not directly pertain to the rights set forth in the Employment Agreement, they do not fall within the scope of the forum selection provision.

Dunwoody responds that forum selection clause is broader than EnVen contends. Dunwoody points to Section 3(d) of the Employment Agreement titled "Duty of Loyalty," which Dunwoody argues creates a contractual duty of loyalty.[33] In view of Section 3(d), Dunwoody contends that the claims at issue in this litigation at least "involv[e]. . . the rights, duties, or obligations of this Agreement" so as to fall within the forum selection provision.[34]

The language of Section 3(d), however, provides only that Dunwoody "acknowledges and agrees" that he owes a duty of loyalty.[35] The word "acknowledge" means "[t]o recognize (something) as being factual or valid" or "[t]o

---

*Corp. BVI v. Adv. Mobilecomm Techs., Inc.*, 854 A.2d 121, 155 (Del. Ch. 2004) ("Delaware's law of fiduciary duty is itself an aspect of our common law."); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 114 n.6 (Del. Ch. 2009) ("Delaware fiduciary duties are based in common law and have been carefully crafted to define the responsibilities of directors and managers, as fiduciaries, to the corporation."); *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *8 n.62 (Del. Ch. Aug. 3, 2004) (referring to the "tort of equitable fraud"); *Mark Fox Gp., Inc. v. E.I. du Pont de Nemours & Co.*, 2003 WL 21524886, at *5 (Del. Ch. July 2, 2003) (explaining that a claim for equitable fraud "must be pursued exclusively in the [Delaware] Court of Chancery"); *Dura Pharms., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 928 (Del. Ch. 1998) (referring to equitable fraud as a "tort theor[y]").

[33] Def.'s Opening Br. at 6–7 (citing Employment Agreement § 3(d)).

[34] Employment Agreement § 19.

[35] Employment Agreement § 3(d).

9

show that one accepts responsibility for" something.[36]  And the word "agree" in this context means "to concur" in something or "to accept or concede something."[37]  Read as a whole, the phrase "acknowledges and agrees" indicates the underlying existence of some fact or proposition.[38]  In other words, through the Employment Agreement, Dunwoody recognized that his position as an officer of a Delaware corporation gave rise to a fiduciary duty of loyalty.  Such language does not transform a common law duty into a contractual one.[39]

The claim for breach of the duty of loyalty arising out of Delaware common law thus does not "involve" obligations under the Employment Agreement.  And the

---

[36] *Acknowledge*, Black's Law Dictionary (11th ed. 2019); *see also Acknowledge*, Merriam-Webster, https://www.merriam-webster.com/dictionary/acknowledge (last visited May 28, 2020) ("acknowledge" means "to recognize the rights, authority or status of" or "to disclose knowledge of or agreement with").

[37] *Agree*, Merriam-Webster, https://www.merriam-webster.com/dictionary/agree (last visited May 28, 2020); *see also Agree*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/agree (last visited May 28, 2020) ("agree" means to "accept a suggestion or idea").

[38] *See Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) ("When the contract is clear and unambiguous, [Delaware courts] will give effect to the plain-meaning of the contract's terms and provisions." (citing *Estate of Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010))).

[39] *Cf. In re AgFeed USA, LLC*, 546 B.R. 318, 334 (Bankr. D. Del. 2016) (observing that a contract providing that an individual "acknowledges and agrees that . . . [he] ha[d] a duty of loyalty to act in the best interests of [the company]" did not "impose an affirmative duty"); *see also cf. Windsor I, LLC v. CWCapital Asset Mgmt., LLC*, 2017 WL 3499919, at *2 (Del. Ch. July 31, 2017) (holding that the "plain and unambiguous language" of a provision in which "the Parties acknowledge[d] that they [were] about to commence negotiations" did not "support the existence of a binding obligation to negotiate" and that other provisions in which the parties "acknowledge[d] and agree[d]" to certain things supported the conclusion that the contract did not "obligate any party to negotiate").

forum selection clause in the Employment Agreement does not strip this Court of proper venue. Dunwoody's motion to dismiss this action on the basis of the forum selection provision is denied.[40]

## B. A Stay of These Proceedings Is Warranted.

Dunwoody next argues that the Court should dismiss or stay this litigation in favor of the Texas Action under the "first-filed rule" set forth in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[41] Under *McWane*, "Delaware courts should exercise discretion in favor of a stay where a prior action, involving the same parties and issues, is pending elsewhere in a court capable of doing prompt and complete justice."[42] Such discretion is exercised "freely" to prevent a defendant from "defeat[ing] the plaintiff's choice of forum in a pending suit by commencing

---

[40] The parties' dispute raises other interesting questions, such as whether it would contravene public policy to interpret the forum selection provision at issue to apply to common law claims for breach of fiduciary duty, or whether an officer of a Delaware corporation can effectively "opt out" of the practical consequences of 10 *Del. C.* § 3114 through an employment agreement with a Delaware corporation. During oral argument, Dunwoody's counsel claimed that the Court in *Bonanno v. VTB Holdings, Inc.* resolved the precise policy question at issue in favor of private ordering. 2016 WL 614412 (Del. Ch. Feb. 8, 2016); Oral Arg. Tr. at 9:3–8. I do not share defense counsel's view of *Bonanno*, which involved a forum selection clause in an agreement signed by the stockholder against whom the agreement was being enforced. 2016 WL 614412, at *15 (observing that the 2015 enactment of 8 *Del. C.* § 115 was not intended to "regulate the use of exclusive forum selection provisions in contracts signed by, and later enforced against, particular stockholders"). In any event, because the parties did not meaningfully brief these questions, and because the plain language of the forum selection provision does not warrant dismissal, this decision does not address them.

[41] 263 A.2d 281 (Del. 1970).

[42] *Ingres*, 8 A.3d at 1145 (citing *McWane*, 263 A.2d at 283).

11

litigation involving the same cause of action in another jurisdiction."[43]  The rule articulated in *McWane* derives from "considerations of comity and the necessities of an orderly and efficient administration of justice."[44]  "[D]ismissals are rarely granted when the first-filed doctrine is invoked."[45]  "[I]t is preferable to merely stay the later-filed action because it is impossible to predict with certainty the course of earlier-filed litigation in another jurisdiction."[46]

EnVen contends that *McWane* does not apply because the Texas Action involves different issues than those at play in this litigation.  The analysis of whether the two cases raise the same issues is a practical one: "[I]t is not necessary to establish that the . . . issues in both actions are identical . . . ; the pragmatic focus is on whether the claims 'are closely related and arise out of the same common nucleus of operative facts.'"[47]

---

[43] *McWane*, 263 A.2d at 283.

[44] *Id.*

[45] Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 5.01[a] (2d ed. 2019).

[46] *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *6 (Del. Ch. Apr. 12, 1994); *see also Hurst v. Gen. Dynamics Corp.*, 583 A.2d 1334, 1341 (Del. Ch. 1990) ("In my view, a stay is the more appropriate form of relief, because that will assure that the plaintiffs are not deprived of a forum.").

[47] *EuroCapital Advisors, LLC v. Colburn*, 2008 WL 401352, at *2 (Del. Ch. Feb. 14, 2008) (quoting *Dura Pharms.*, 713 A.2d at 930); *see also ODN Hldg. Corp. v. Hsu*, 2012 WL 1345487, at *8 (Del. Ch. Mar. 30, 2012).

To distinguish this case from the Texas Action, EnVen describes the Texas Action as a "narrow contract dispute that turns on whether the circumstances of Dunwoody's resignation constitute the contractually defined conditions that constitute 'Good Reason.'"[48] As EnVen's original answer in the Texas Action reflects, however, the alleged scheme involving Oilfield at issue in this litigation is potentially relevant to whether Dunwoody resigned for "Good Reason."[49] After Dunwoody developed his *McWane* arguments in this action, EnVen removed all mention of the Oilfield scheme from its answer to Dunwoody's amended complaint in the Texas Action. EnVen now disclaims any intent to litigate those issues in Texas.[50] But it is common for companies to raise fiduciary duty claims in disputes over a departing officer's entitlement to compensation.[51] And EnVen's efforts to remove from the Texas Action the alleged scheme underlying their claims for breach of fiduciary duty seem designed to strengthen EnVen's position on the instant motion only.[52] EnVen's tactics do not obscure the common nucleus of operative

---

[48] Pl.'s Ans. Br. at 12.

[49] First Lam Aff. Ex. 3 ¶ 5 (describing the Oilfield scheme).

[50] Pl.'s Ans. Br. at 13–15.

[51] This Court sees this pattern with some frequency in the advancement context. *See, e.g.*, *Fillip v. Centerstone Linen Servs., LLC*, 2013 WL 6671663, at *2 (Del. Ch. Dec. 3, 2013); *Paolino v. Mace Sec. Int'l Inc.*, 985 A.2d 392, 403 (Del. Ch. 2009); *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *1 (Del. Ch. Jan. 30, 2004).

[52] As discussed above, EnVen's decision to remove allegations concerning the Oilfield scheme from its original answer in the Texas Action did not materialize until *after*

facts and an overlap of issues in the cases, which is sufficient to warrant application of *McWane*.

Despite the common facts and overlapping issues, it is true that the claims in both lawsuits are not identical. The Texas Action involves Dunwoody's contractual claim that he had the right to terminate the Employment Agreement for "Good Reasons." By contrast, this action concerns whether Dunwoody adhered to his fiduciary obligations or committed fraud in connection with the alleged Oilfield scheme, and whether Oilfield aided and abetted in those actions. Resolving the claims in this case might not necessarily resolve the ultimate legal issues to be litigated in the Texas Action, and vice versa. At this stage, "it is impossible to predict with certainty the course of" the Texas Action.[53] For this reason, dismissal of the instant action could work injustice by foreclosing relief to EnVen. By contrast, a stay of this litigation achieves the goals of *McWane* by giving deference to Dunwoody's chosen forum, avoiding waste of scarce judicial resources, and

---

Dunwoody filed in this action a dismissal brief arguing that both lawsuits involve substantially similar factual bases.

[53] *Schnell*, 1994 WL 148276, at *6.

foreclosing potential conflicting rulings on common issues.[54]  Thus, this litigation is

stayed pending the outcome of the Texas Action.[55]

## III.  CONCLUSION

For the foregoing reasons, the case is STAYED pending resolution of the

Texas Action.  The parties shall report to the Court concerning the status of the Texas

action on a quarterly basis.

---

[54] *See In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *8 (Del. Ch. July 2, 2018) (staying Delaware litigation in favor of a Kentucky action where "[t]he simultaneous procession of both actions risks the significant waste of scarce judicial resources and, more importantly, the inconsistent resolution of relevant issues"); *Gen. Video Corp. v. Kertesz*, 2006 WL 2051023, at *4 (Del. Ch. July 19, 2006) (staying Delaware litigation in favor of a Texas action "based on the substantial overlap of issues between the actions and real possibility of inconsistent rulings if all actions were allowed to proceed simultaneously").

[55] Dunwoody further argues that this Court should consider EnVen's lawsuit improperly "reactive" and retaliatory in determining whether to dismiss or stay these proceedings, and further argued that EnVen engages in impermissible "claim splitting" by pursuing this litigation.  Def.'s Opening Suppl. Br. at 3–6; Def.'s Suppl. Reply Br. at 2.  Because the Court finds that a discretionary stay is warranted, it need not address these arguments.