IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

 RENÈ SIMON CRUZ, JR., an )
 individual, and ESPERANZA )
 ENTERPRISES, LLC, a Delaware )
 limited liability company, )
 )
 Plaintiffs, )
 )
 v. ) C.A. No. 2020-0013-KSJM
 )
 RENA DILLON CRUZ, )
 )
 Defendant, )
 )
 and )
 )
 CRUZ MINERAL INVESTMENTS, )
 LLC, a Delaware limited liability )
 company, )
 )
 Nominal Defendant. )

 ORDER RESOLVING TECHNICAL CLAIMS &
 DEFENDANT’S MOTION TO DISMISS OR STAY
 1. Plaintiff Renè Simon Cruz, Jr. (“Renè”) and Defendant Rena Dillon

Cruz (“Rena”) are married but currently engaged in a divorce proceeding in

California (the “Divorce Proceeding”).1 During their marriage, they set up various

Delaware limited liability companies to manage land and mineral rights in Texas.

1
 C.A. No. 2020-0013-KSJM, Docket (“Dkt.”) 124, Joint Pre-Trial Stipulation & Order
(“PTO”) at 10. This Order distinguishes the parties who share a last name by referring to
them by their first names, as the parties do in their briefs. The Court intends no disrespect.
 2. Nominal Defendant Cruz Mineral Investments, LLC (“Cruz Mineral”)

is a Delaware LLC formed in 2012. 2 Renè and Rena were appointed as the initial

Managers of Cruz Mineral. 3

 3. Cruz Mineral is equally owned by two Delaware LLCs—Plaintiff

Esperanza Enterprises, LLC (“Esperanza”) and non-party Trees of Life, LLC (“Trees

of Life”). 4

 4. Esperanza is a Delaware LLC formed in 2014.5 Renè was appointed as

the initial Manager of Esperanza. 6 Esperanza is wholly owned by the Renè Cruz

2012 Delaware Grantor Trust (“Renè’s Trust”).7 As of August 21, 2019, Renè’s

Trust had two trustees: Rena and non-party Stephen K. De Silva. 8

 5. Trees of Life is a Delaware LLC formed in 2014.9 Rena was appointed

as the initial Manager of Trees of Life.10 Trees of Life is wholly owned by the Rena

2
 Id. at 7.
3
 Id.
4
 Id.
5
 Id. at 6.
6
 Id. at 7.
7
 Id.
8
 JX-75, Def.’s Suppl. & Am. Answers & Objs. to Pls.’ First Set of Interrogs. Directed to
Def. Rena Dillon Cruz at 6 (Interrog. No. 3).
9
 PTO at 9.
10
 Id.

 2
Cruz 2014 Delaware Grantor Trust (“Rena’s Trust”).11 As of August 21, 2019,

Rena’s Trust was managed by Rena and De Silva.12

 6. On August 21, 2019, Rena and De Silva executed a writing that

purported to remove Renè as Manager of Esperanza and replace him with De Silva

(the “Esperanza Removal”).13 After the Esperanza Removal was executed, Rena, as

Manager of Trees of Life, and De Silva, purportedly as Manager of Esperanza,

executed a writing that removed Renè as Manager of Cruz Mineral (the “Cruz

Mineral Removal”). 14

 7. On January 8, 2020, Renè commenced litigation in this Court

challenging the validity of the removals and seeking expedited proceedings.15 On

January 14, 2020, Renè amended his complaint to add additional claims against Rena

for breach of fiduciary duty and wrongful removal. 16 In total, Renè brought six

Counts:

 • In Count I, Renè claims that Rena breached her fiduciary duties as
 Manager of Cruz Mineral.

11
 Id. at 9–10.
12
 Id. at 10. The trustee of Rene’s Trust was the New York Private Trust Company, and
the trust committee was comprised of Rena and De Silva. Id.
13
 JX-37, Removal and Replacement of Manager of Esperanza Enterprises, LLC at 1.
14
 Id. at 2.
15
 Dkt. 1, Verified Direct & Derivative Compl.
16
 Dkt. 18, Verified Am. & Suppl. Direct & Derivative Compl.

 3
 • In Count II, Renè claims that Rena breached the Cruz Mineral LLC
 Agreement.

 • In Count III, Renè requests an accounting of Cruz Mineral.

 • In Count IV, Renè claims that Rena breached her fiduciary duties as
 trustee of Renè’s Trust.

 • In Count V, Renè seeks a declaratory judgment that the Esperanza
 Removal was invalid.

 • In Count VI, Renè seeks a declaratory judgment that the Cruz Mineral
 Removal was invalid.17

 8. Rena moved to dismiss or stay this action in favor of the first-filed

Divorce Proceeding (the “McWane Motion”).18 The Court granted expedited

proceedings toward a trial on Counts V and VI (the “Technical Challenges”) and

agreed to hear argument contemporaneously on the McWane Motion on the day of

trial.19

 9. The Court held a one-day trial concerning the Technical Challenges and

a hearing on the McWane Motion on August 7, 2020. By agreement of the parties,

the trial was conducted on a paper record. The parties filed supplemental

17
 Id. ¶¶ 97–140.
18
 In briefing, Rena did not object to the Court resolving the Technical Challenges. See
Dkt. 126, Suppl. Br. in Supp. of Def. Rena Dillon Cruz’s Mot. to Dismiss or Stay in Favor
of First-Filed Litig. (“Def.’s Suppl. Br.”) at 1–2.
19
 In the interim, Rena purported to reappoint Renè to his Manager roles. PTO at 11. Renè
then filed a second amended complaint challenging Rena’s authority to execute the
reappointments. Dkt. 76, Second Verified Am. & Suppl. Direct & Derivative Compl.

 4
submissions concerning the McWane Motion on August 20, 2020. This Order

addresses the Technical Challenges and the McWane Motion.

 TECHNICAL CHALLENGES

 10. Renè contends that the Esperanza Removal was invalid because Rena

lacked the power to remove Renè and, alternatively, because Rena did not comply

with the technical removal requirements. At the Cruz Mineral level, action by a

Majority-in-Interest is required to effect removal of a Manager. 20 Esperanza owns

50% of the Cruz Mineral units, so a Manager of Cruz Mineral cannot be removed

without the valid consent of Esperanza.21 If the Esperanza Removal is invalid, then

De Silva lacked the authority to act on behalf of Esperanza, rendering the Cruz

Mineral Removal invalid.22

20
 The Cruz Mineral Operating Agreement states that “[a] Manager may be selected and
removed at any time by Members owning more than 50% of the Units owned by Members.”
JX-2, Cruz Mineral Investments LLC Limited Liability Company Agreement § 2.01.
21
 See JX-79, Second Amendment to Limited Liability Company Agreement of Cruz
Mineral Investments LLC at 3 (acknowledging Esperanza’s 50% ownership in 2014); see
also Dkt. 93, Pls.’ Pre-Trial Br. at 5 (acknowledging that Esperanza still holds a 50%
interest in Cruz Mineral); Dkt. 100, Def.’s Pre-Trial Answering Br. at 10 (same).
22
 The parties agree that the validity of the Cruz Mineral Removal hinges on the validity of
the Esperanza Removal. See Pls.’ Pre-Trial Br. at 5 (“Because the Esperanza Removal was
invalid, the [Cruz Mineral] Removal is also invalid.”); Dkt. 130, 8-7-20 Trial and Oral Arg.
on Def.’s Mot. to Dismiss or Stay Via Video Conference at 35 (counsel for Rena arguing
that “plaintiffs’ argument regarding Rene’s [sic] removal at Cruz Mineral Investments,
LLC fails in Rena Cruz and Mr. DeSilva properly remove[d] Rene [sic] at Esperanza[.]”).

 5
 11. The Esperanza LLC Agreement provides that “[a]t any time, the

Majority-in-Interest of the Members may remove any Manager(s) or successor

Manager(s)[.]” 23 Renè’s Trust owns 100% of the membership interests of Esperanza

and thus a Majority-in-Interest of the Members. Renè’s Trust could act through its

trustees, Rena and De Silva. Renè’s trust provides that “if two trustees are acting

with respect to any matter as to which they have joint powers, they must act jointly

in order to take any action or effect any decision.”24 Rena agrees that she was

required to act jointly with De Silva in order for the Esperanza Removal to be valid.25

 12. The face of the Esperanza Removal evidences that Rena and De Silva

did not act jointly to remove Renè as Manager of Esperanza. The Esperanza

Removal states:

 I am the currently acting and duly appointed Trustee of
 [Renè’s Trust]. . . . As Trustee of the Trust, the sole
 Member of [Esperanza], I do hereby exercise the power of
 the Trust to remove RENÉ SIMON CRUZ, JR. as
 Manager of the Company, and replace him by the
23
 JX-8, Limited Liability Company Agreement of Esperanza Enterprises § 5.02(d).
24
 JX-3, Rene Cruz 2012 Delaware Grantor Trust § 5.09(b).
25
 Def.’s Pre-Trial Answering Br. at 42; see also PTO at 17–18 (“All deposition transcripts
from this litigation shall be admitted into evidence at trial, and thus may be relied upon by
any Party in post-trial briefing[.]”); Dkt. 117, Pls.’ Notice of Lodging of Deps. Ex. B,
Videotaped Deposition of Stephen De Silva (“De Silva Dep. Tr.”) at 58 (acknowledging
that the plain language of Esperanza operating agreement requires the trustees to act jointly
to remove a Manager); id. Ex. C, Videotaped Deposition of Rena Dillon Cruz at 120
(same); id. Ex. E, Deposition of Reeve Chudd, Esq at 34–35 (acknowledging that the plain
language of the Esperanza operating agreement requires the trustees to act jointly to remove
a Manager and that the legal advice he provided to Rena reflected that).

 6
 appointment of STEPHEN K. DE SILVA as successor
 Manager of [Esperanza], effective immediately. 26

In addition to using first-person singular nouns and verbs, Rena signed the Esperanza

Removal as “Trustee of [Renè’s Trust].” 27 De Silva’s signature line contains no

indication that he was signing in his capacity as a trustee of Esperanza.28 Rather, the

following statement appears before De Silva’s signature line: “I do hereby accept

appointment as successor Manager of the Company.” 29 And on the Cruz Mineral

Removal, which De Silva concurrently signed, he is identified as: “Manager of

Esperanza.” 30 The plain language of the document therefore reflects that De Silva

signed it as an appointee to accept his appointment as Manager—not as a trustee to

approve Renè’s removal as Manager.

 13. Because the plain language of the Esperanza Removal does not support

Rena’s position, Rena argues as a fallback that the consent is valid if the persons

with the power to act—Rena and De Silva—approved the removal, regardless of

whether De Silva executed the document in the appropriate capacity. 31

26
 JX-37 at 1.
27
 See id.
28
 See id.
29
 See id.
30
 See id. at 2.
31
 See Def.’s Pre-Trial Answering Br. at 43–44.

 7
 14. Rena cites to this Court’s decision in Ravenswood Investment Co. v.

Estate of Windmill for support. 32 In Ravenswood, a three-person corporate board

acted by unanimous written consent to approve the issuance of stock options to

directors in exchange for promissory notes. 33 Even though only two of the three

directors actually signed the written consent at issue, this Court determined that the

non-signatory director’s after-the-fact testimony was “sufficient to authenticate the

document and to satisfy [the Court] that [the non-signatory] approved the matters set

forth in the consent in his capacity as director.”34

 15. Rena’s fallback argument fails on the facts. Unlike in Ravenswood,

De Silva’s testimony does not evidence that he actually approved the Esperanza

Removal in his capacity as a trustee when the document was executed. De Silva

testified that he was not familiar with the Esperanza LLC Agreement, 35 that he relied

on Rena and her counsel for legal advice, 36 that Rena never explained the removal

provisions at issue, 37 and that he was “not aware” of whether any joint action was

32
 See Def.’s Answering Br. at 43 (citing 2018 WL 1410860 (Del. Ch. Mar. 21, 2018),
aff’d, 210 A.3d 705 (Del. 2019)).
33
 Ravenswood, 2018 WL 1410860 at *6.
34
 Id. at *6 n.57; see also id. (noting the non-signatory director “testified credibly that he
recognized the written consent and related documents and that he approved them”).
35
 See De Silva Dep. Tr. at 61–66.
36
 Id. at 68–69.
37
 Id. at 68.

 8
taken.38 It appears as if De Silva blindly signed the documents that Rena had sent

to him. He explained that Rena “could have sent [him] a prescription for a

veterinarian medicine and [he] would have signed that.” 39 De Silva’s own testimony

therefore undermines Rena’s argument that De Silva intended to remove Renè as

Manager.

 16. At trial, Rena additionally argued, for the first time, that De Silva had

delegated his authority to act as a trustee to Rena, and thus only Rena’s signature

was required for the Esperanza Removal to be valid. This additional argument also

fails on the facts. The delegation provision on which Rena relies requires that any

delegation be “in writing,” and Rena supplied no evidence of a writing at trial.40

Also, Rena stated in discovery that no such delegations had ever occurred. 41

 17. At bottom, Rena chose to act by written consent to remove Renè as

Manager of Esperanza. The writing itself is defective because it does not evidence

that De Silva acted jointly in his capacity as a trustee of Renè’s Trust. The evidence

does not support a finding that De Silva intended to consent to the removal in his

capacity as a trustee. Nor does the evidence support a finding that De Silva delegated

38
 Id. at 58–59.
39
 Id. at 117.
40
 JX-3 § 5.11(b) (“A trustee from time to time by writing may delegate to any other
trustee[.]” (emphasis added)).
41
 JX-63, Def.’s Answer & Objs. to Pls.’ First Set of Interrogs. Directed to Def. Rena Dillon
Cruz at 7 (Interrog. No. 5).

 9
his authority to Rena. The Esperanza Removal is therefore invalid, and thus any

subsequent acts by De Silva as Manager following the Esperanza Removal,

including the execution of the Cruz Mineral Removal, are also invalid.

 MOTION TO DISMISS OR STAY

 18. The remaining claims assert breaches of fiduciary duty against Rena

and seek an accounting for the various relevant entities. Rena argues that these

claims ought to be stayed or dismissed under the “first-filed rule” set forth in

McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.42

 19. Under McWane, “Delaware courts should exercise discretion in favor

of a stay where a prior action, involving the same parties and issues, is pending

elsewhere in a court capable of doing prompt and complete justice.”43 This rule

derives from “considerations of comity and the necessities of an orderly and efficient

administration of justice.”44 It “avoid[s] the wasteful duplication of time, effort, and

expense that occurs when judges, lawyers, parties, and witnesses are simultaneously

engaged in the adjudication of the same cause of action in two courts” as well as

42
 See Def.’s Answering Br. at 29 (citing 263 A.2d 281 (Del. 1970)).
43
 Ingres Corp. v. CA, Inc., 8 A.3d 1143, 1145 (Del. 2010) (citing McWane, 263 A.2d at
283).
44
 Id. (quoting McWane, 263 A.2d at 283).

 10
“the possibility of inconsistent and conflicting rulings and judgments and an

unseemly race by each party to trial and judgment in the forum of its choice.”45

 20. Renè responds that (i) the Divorce Proceeding is not a prior-pending

action, (ii) it does not involve the same parties and issues, and (iii) California courts

are not capable of rendering “prompt” justice. The first and third points are

unavailing. The Divorce Proceeding is a prior-pending action for the purposes of

McWane. 46 And California’s comparative speed does not render justice less than

prompt.47 Thus, whether a stay is warranted depends on whether the two actions

involve the same parties and issues.

45
 McWane, 263 A.2d at 283.
46
 Renè commenced the Divorce Proceeding on July 25, 2019, and Renè commenced this
action on January 8, 2020. See PTO at 2, 10; see also Choice Hotels Int’l, Inc. v. Columbus-
Hunt Park DR. BNK Inv’rs, L.L.C., 2009 WL 3335332, at *11 (Del. Ch. Oct. 15, 2009)
(“While McWane largely anticipated situations in which defendants sought to defeat a
plaintiff’s choice of forum by filing a later action in a different court, the purpose of the
first-filed rule is even broader. It seeks to protect the parties and the courts from (1) the
wasteful duplication of time, effort, and expense, (2) the possibility of inconsistent and
conflicting rulings and judgments, and (3) the likelihood of an ‘unseemly race’ to trial and
judgment. These policies would be defeated just as easily by a single party filing two or
more actions in diverse forums and thereby forcing the nonfiling party to expand its efforts
significantly.” (citing McWane, 263 A.2d at 283)).
47
 See ODN Hldg. Corp. v. Hsu, 2012 WL 1345487, at *8 (Del. Ch. Mar. 30, 2012) (finding
that, under McWane, “the California Superior Court is capable of providing prompt and
complete justice”). To mitigate any risk of delaying “prompt justice,” the parties shall
provide this Court with a quarterly status update on the Divorce Proceeding in the form of
a letter on the docket. This Court will continue to assess whether a stay is warranted based
on these submissions.

 11
 21. The analysis of the overlap between two actions is a practical one.

“Courts have found parties to be substantially the same under McWane where related

entities are involved but not named in both actions, referring to the exclusion as more

of a matter of form than substance.” 48 Further, “it is not necessary to establish that

the . . . issues in both actions are identical . . . ; the pragmatic focus is on whether the

claims ‘are closely related and arise out of the same common nucleus of operative

facts.’” 49

 22. The parties-in-interest in the competing cases here are the same: Rena

and Renè. Although Renè notes that Esperanza and Cruz Mineral have not been

joined to the Divorce Proceeding, this distinction concerns more form than

substance. Rena and Renè control the entities named as parties in this action, which

were formed to manage the Cruz family’s wealth. 50 The two actions therefore

48
 Brookstone P’rs Acq. XVI, LLC v. Tanus, 2012 WL 5868902, at *3 (Del. Ch. Nov. 20,
2012) (internal quotations and citations omitted); see also Gen. Video Corp. v. Kertesz,
2006 WL 2051023, at *4 (Del. Ch. July 19, 2006) (“An absolute identity of the parties and
issues is not necessary for a dismissal or stay under McWane.”); Kurtin v. KRE, LLC, 2005
WL 1200188, at *5 (Del. Ch. May 16, 2005) (“[T]he ‘same parties’ requirement has been
met by ‘related entities,’ somewhat overlapping parties, and persons in privity with the
parties.” (citations omitted)).
49
 EuroCapital Advisors, LLC v. Colburn, 2008 WL 401352, at *2 (Del. Ch. Feb. 14, 2008)
(quoting Dura Pharms., Inc. v. Scandipharm, Inc., 713 A.2d 925, 930 (Del. Ch. 1998));
see also ODN Hldg. Corp., 2012 WL 1345487 at *8–9 (holding that Delaware action arose
from “the same common nucleus of operative facts” as California action and granting
motion to stay).
50
 See Pls.’ Pre-Trial Br. at 1 (“The Cruzes created CMI in 2012 as part of their estate
planning.”); Def.’s Pre-Trial Answering Br. at 3 (“Nearly a decade ago, newfound wealth

 12
involve “somewhat overlapping parties, and persons in privity with the parties.”51

This is sufficient overlap to warrant a stay of proceedings under McWane.

 23. The issues in the competing cases are also closely related and arise out

of the same common nucleus of operative facts. As discussed above, the entities

involved in this case were formed for the purpose of managing familial wealth.52

The Divorce Proceedings will resolve the division of marital property, rendering the

issues sufficiently closely related. 53

 24. The parties’ pre-trial briefs are demonstrative of the impracticability of

cabining the issues in the Divorce Proceeding from the issues underlying this

litigation. For example, despite the limited scope of the Technical Challenges, the

parties’ pre-trial briefs collectively mentioned the term “divorce” sixty times, and

both parties filed motions in limine to exclude the other side from citing evidence

blessed Rena and her family through an inheritance from her mother. Estate planning
professionals established a limited liability company and trust structure in the interest of
accessing, managing, protecting, and preserving that wealth for the benefit of the Cruz
family.”); see also JX-2 § 1.05 (“The purposes of the [Cruz Mineral] Company are . . . (c)
to provide protection of family assets from claims of future creditors of the Members; (d)
to prevent the transfer of family assets to persons with outside and possible adverse
interests; [and] (e) to promote the Members’ knowledge of and communication about
family assets[.]”).
51
 Kurtin, 2005 WL 1200188 at *5.
52
 See supra note 50 and accompanying text.
53
 See JX-21, Petition for Divorce and Summons at 4 (noting that, in the Divorce
Proceedings, Renè requests that the court: “Confirm as separate property the assets and
debts in . . . . All property acquired prior to marriage, inheritance and/or after the date of
separation”).

 13
related to circumstances of the couple’s divorce.54 The parties then submitted a

revised pre-trial order advising the Court to disregard eight categories of evidence

cited in the parties’ pre-trial briefing.55 This was, needless to say, inefficient. While

the issues in the two proceedings are not identical per se, “an orderly and efficient

administration of justice” requires a stay of this case in favor of the Divorce

Proceeding.

 25. Notwithstanding the concerns of judicial efficiency, Renè argues that

by resolving the Technical Challenges, the Court moots the McWane Motion because

partial McWane relief is unavailable under Delaware law. Renè focuses on

“Delaware law’s aversion to claim splitting.” 56 Furthermore, Renè argues that this

Court tends to only allow separate claims to proceed in another venue when they are

not closely related. 57

54
 See Pls.’ Pre-Trial Br.; Def.’s Pre-Trial Answering Br.; Pls.’ Pre-Trial Reply Br.;
Dkt. 99, Pls.’ Mot. in Lim.; Dkt. 101, Def. Rena Dillon Cruz’s Mot. in Lim. to Enforce
This Action’s Narrow Scope.
55
 See Dkt. 116, Joint Pre-Trial Stipulation and [Proposed] Order at 11–14.
56
 See Dkt. 127, Pls.’ Suppl. Br. at 6 (citing Nat’l Union Fire Ins. Co. of Pittsburg v.
Trustwave Ltd., 2017 WL 7803921, at *2 (Del. Super. Dec. 21, 2017)); see also Maldonado
v. Flynn, 417 A.2d 378, 383 (Del. 1980) (“The rule against claim splitting . . . is based on
the belief that it is fairer to require a plaintiff to present in one action all of his theories of
recovery relating to a transaction, and all of the evidence relating to those theories, than to
permit him to prosecute overlapping or repetitive actions in different courts or at different
times.”).
57
 See Pls.’ Suppl. Br. at 8–10 (citing Feeley v. NHAOCG, LLC, 62 A.3d 649, 656–57, 676
(Del. Ch. 2012); Julian v. Julian, 2009 WL 29337121, at *9–10 (Del. Ch. Sept. 9, 2009)).

 14
 26. Rena counters that McWane is a contextual application of the forum non

conveniens doctrine, and under that doctrine, this Court has allowed certain claims

to proceed in Delaware while staying other claims. 58 Additionally, Rena argues that

this Court has held that it may afford differential treatment to mixed summary

control claims and plenary issues.59

 27. None of the cases cited by either party are directly on point, but the

common theme that emerges from them all is the “promot[ion] [of] cost-effective

and efficient administration of justice in the circumstances of this case.”60 In this

case, it was appropriate for the Court to expeditiously resolve the Technical

Challenges, which implicated the control and operation of Delaware entities. For

58
 See Def.’s Suppl. Br. at 6–7 (citing AlixPartners, LLP v. Mori, 2019 WL 6327325, at
*12–14 (Del. Ch. Nov. 26, 2019) (“[W]hen considering whether to stay proceedings under
the doctrine of forum non conveniens, the defendant need only show that, ‘on balance,’ the
‘relevant factors preponderate in favor of granting a stay.’”)).
59
 See Def.’s Suppl. Br. at 11 (citing Ryan v. Mindbody, Inc., 2019 WL 4805820, at *1
(Del. Ch. Oct. 1, 2019); Carballal v. PMBC Corp., 1999 WL 342341, at *2–3 (Del. Ch.
May 14, 1999); Kellner v. Interlakes (Canada) Realty Corp., 1982 WL 17860, at *4
(Del. Ch. July 6, 1982)).
60
 Julian, 2009 WL 2937121 at *9; see also AlixPartners, 2019 WL 6327325 at *14
(holding that partial stay was warranted, in part, because “trial in Italy . . . might very well
be easier, more expeditious, and less expensive”); Mindbody, 2019 WL 4805820 at *1
(holding that partial stay was warranted because “[t]he Section 225 Claims have been fully
litigated and briefed, there is no reason to delay their resolution, and it would be inefficient
to switch teams for the purpose of prosecuting those claims at this stage”); Nat’l Union,
2017 WL 7803921 at *2 (noting the relevance of “McWane’s observations regarding the
‘wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties,
and witnesses are simultaneously engaged in the adjudication of the same cause of action
in two courts’” (quoting McWane, 263 A.2d at 283)).

 15
the reasons discussed above, however, staying the remainder of the claims in favor

of the Divorce Proceeding would be the most orderly and efficient approach.

 CONCLUSION

 28. Judgment is entered in favor of Renè on the Technical Challenges. The

remaining claims are stayed in favor of the Divorce Proceeding. The parties shall

provide ongoing quarterly status updates regarding to the Divorce Proceeding.

 /s/ Kathaleen St. J. McCormick
 Vice Chancellor Kathaleen St. J. McCormick
 Dated: September 28, 2020

 16