**DURA PHARMACEUTICALS, INC., a Delaware Corporation, Plaintiff,**

v.

**SCANDIPHARM, INC., a Delaware Corporation, Defendant.**

**Civil Action No. 16149.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 11, 1998.
Decided: Feb. 20, 1998.

Kevin G. Abrams and Catherine G. Dearlove, of Richards, Layton & Finger, Wilmington; William F. Sullivan, Christopher H. McGrath and Kimberly S. Steckling, of Brobeck, Phleger & Harrison, L.L.P., San Diego, California, of counsel, for Plaintiff.

Thomas R. Hunt, Jr., Alan J. Stone, David J. Teklits and Eric Lopez Schnabel, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Defendant.

## OPINION

LAMB, Vice Chancellor.

### I. INTRODUCTION

Before the Court is the defendant's motion to dismiss or stay this action in favor of an

action filed by it in the Circuit Court of Shelby County, Alabama (the "Alabama Action"). Defendant argues that the Alabama Action is the first filed action, involves the same parties and issues and is pending in a court capable of doing prompt and complete justice between the parties. Thus, it suggests, Delaware authorities, beginning with *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Corp.*, Del Supr., 263 A.2d 281 (1970), require that this action be dismissed or stayed in favor of the Alabama Action.

Plaintiff responds that the *McWane* comity analysis should not apply because, *inter alia*, the actions were filed so closely in time that neither should be accorded "first filed" status. Alternatively, the plaintiff opposes the motion on the ground that the other factors normally examined in relation to a motion to dismiss for *forum non conveniens* weigh in favor of litigating in Delaware rather than Alabama.

The motion will be granted because the factors enumerated in *McWane* are present here and, in the absence of special circumstances not present here, while Delaware might be a more convenient forum than Alabama for the conduct of this litigation, the relative conveniences of the parties cannot outweigh or overcome the "strong preference for the litigation of a dispute between named parties in [the] forum in which suit was first instituted." *E.I. Du Pont De Nemours & Co. v. Cigna Property & Cas. Co.*, Del.Ch., C.A. No. 12386, Allen, C., 1992 WL 171427 (July 17, 1992) slip op. at 9.

## II. FACTS

Plaintiff, Dura Pharmaceuticals, Inc. ("Dura"), is a Delaware corporation having its principal place of business in San Diego, California. Dura manufactures and sells pharmaceutical products, including products to treat allergies, asthma and other respiratory conditions.

Defendant, Scandipharm, Inc. ("Scandipharm"), is a Delaware corporation having its principal place of business in Birmingham, Alabama. Scandipharm is a pharmaceutical distributor and sells, among other things, products to treat cystic fibrosis.

Both this action and the Alabama action arise out of the negotiation and performance of an Agreement and Plan of Merger and Reorganization (the "Merger Agreement") entered into on October 20, 1997 between Scandipharm, Dura and Scandi Acquisition Corp. ("Acquisition Sub"), a wholly owned subsidiary of Dura formed for the purpose of merging with and into Scandipharm. The contacts and negotiations leading up to the merger took place in Texas, California and Alabama and involved advisors in California, Pennsylvania and Maryland. As a part of this process, on October 7–8, 1997, representatives of the parties met in Alabama for a drafting session and due diligence review. The Merger Agreement was executed in counterparts by Dura and Acquisition Sub in San Diego and by Scandipharm in Alabama. On November 29, 1997, Dura purported unilaterally to terminate the Merger Agreement, allegedly as a result of its having learned certain information giving rise to a right to do so in accordance with the terms of the Merger Agreement.

The Merger Agreement provides that it is to be governed by and construed and enforced in accordance with Delaware law. It also contains a provision by which the parties agree that "any action or proceeding arising out of or relating to" the Merger Agreement "may be heard and determined in any Delaware state or federal court" and by which each party "irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding." (Merger Agreement, § 10.06)

On Friday, January 16, 1998, Scandipharm filed suit against Dura in the Circuit Court of Shelby County, situated in Columbiana, Alabama. Columbiana is approximately 40 miles from Birmingham and is the seat of the county in which Scandipharm maintains its executive offices. The complaint naming Dura and Acquisition Sub as defendants, alleges that Dura wrongfully terminated the Merger Agreement and seeks specific performance and damages. Scandipharm notified Dura on January 16th of the filing of the

Alabama Action, although actual service of the complaint was not accomplished until the following week.

Reacting to the filing of the Alabama Action, Dura attempted to commence this action on Sunday, January 18th, by depositing a complaint in the Register in Chancery's night box. This was ineffective, and Dura refiled the complaint on Tuesday, January 20th, the next business day. In its complaint, Dura seeks: (i) a declaration that it properly terminated the Merger Agreement, (ii) specific performance of the termination provisions of the Merger Agreement, and (iii) damages based on tort theories of fraud, equitable fraud and negligent misrepresentation. The tort claims all revolve around the same disclosure issue that is alleged to give rise to the right to terminate the contract.

In opposition to the pending motion, Dura presented, in addition to its brief, the Affidavit of James W. Newman, Senior Vice President, Finance and Administration and Chief Financial Officer of Dura. Paragraphs 30–41 of the Newman Affidavit contains factual assertions regarding the location of witnesses and the relative ease of access to proof in Delaware and Alabama.

## III. DISCUSSION

■ It is well established that this Court may, in the exercise of its discretion, dismiss or stay an action pending before it in favor of an action pending in another jurisdiction. *McWane*, 263 A.2d at 283. It is equally well settled that this Court's discretion "should be exercised freely in favor of the stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues," and that "as a general rule, litigation should be confined to the forum in which it is first commenced, and that a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing." *Id.* These principles are "impelled by considerations of comity and the necessities of an orderly and efficient administration of justice." *Id.*

[Thus], there is avoided the wasteful duplication of time, effort and expense that occurs when judges, lawyers, parties and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts. Also to be avoided is the possibility of inconsistent and conflicting rulings and judgments and an unseemly race by each party to trial and judgment in the forum of its choice.

*Id.* As discussed, *infra*, I hold that *McWane* requires the stay or dismissal of this action. In the circumstances presented, there are no interests favoring litigating in Delaware sufficient to overcome the strong presumption in favor of confining the litigation to Alabama.

### A. *The Alabama Action is First Filed*

■ The Alabama Action was filed before the Delaware Action and as such should ordinarily be considered "first-filed." Dura resists this conclusion, arguing that the actions were filed so closely together in time, that they should be regarded as "contemporaneous" and, thus, outside the *McWane* comity analysis favoring first-filed actions.

It is true that the *McWane* "first-filed" analysis is not applied mechanically or as a "bright-line" rule. There have been situations in which this Court has treated actions filed close in time to be contemporaneously filed for purposes of *McWane*. For example, in *Texas Instruments Inc. v. Cyrix Corp.*, Del.Ch., C.A. No. 13288, Jacobs, V.C., 1994 WL 96983 (March 22, 1994) slip op. at 5–6, the Court refused to consider the Delaware action "first-filed" where it was filed a mere five hours before an action in Texas and the record showed that the Texas action was filed independently of, and not in reaction to, the Delaware action. In that case, the Court considered the fact that the parties had engaged in a race to the courthouse which resulted in two filings the first business day after the expiration of a standstill agreement, concluding that the mere fact that Texas Instruments had "won that race by five hours should not, without more, impose upon the defendant the significant burden of proving inconvenience and hardship which might result in the denial of a stay that would otherwise be granted." *Id.* at 3–4. The

Court went on to stay the "first-filed" Delaware action, finding that the traditional *forum non conveniens* factors "weighed heavily in favor" of litigating in Texas.

The special circumstances present in *Cyrix* are not found here. There was no "race to the courthouse" following the expiration of a standstill agreement. On the contrary, both parties had been free to file suit for several weeks. While there is a suggestion that Dura was also in the process of preparing suit papers when it learned of Scandipharm's complaint, Dura "was shocked by the filing of litigation in Alabama" (Newman Aff. ¶ 28) and made its decision to file suit in reaction to, rather than independently of, news of that filing. The fact that the two complaints were filed within one business day of one another is not an indication of independent decision-making, as in *Cyrix*, but merely a testament to Dura's alacrity in responding to Scandipharm's choice of Alabama as the forum for this litigation. Neither *Cyrix* nor the other cases cited by Dura[1] suggest that, in the absence of other, special circumstances,[2] a second-filed, *reactive* Delaware action will succeed in ousting a foreign plaintiff of its choice of forum simply by the speed with which it is filed. Indeed, such a rule would undermine the very considerations of comity

and efficiency on which the general rule of *McWane* is based, by encouraging a "race" to file responsive or reactive complaints.

■ Dura suggests three other reasons why the Alabama Action should not be accorded first filed status: (i) the fact that the complaint in the Alabama Action (although served promptly after the commencement of that action) was not served until after service of the complaint in this action, (ii) the existence of the provision in the Merger Agreement specifying Delaware as a forum in which disputes arising thereunder "may" be litigated, and (iii) the procedural immaturity of the Alabama Action. None of these arguments requires an extended discussion. The first of these was dealt with conclusively by then Vice Chancellor Chandler in *In the Matter of Application of Advanced Drivers Education Products and Training, Inc.*, C.A. No. 14905, Chandler, V.C., 1996 WL 487940 (August 16, 1996) slip op. at 3–4. The second over reads the relevant provision of the Merger Agreement, which merely identifies the courts of this State as ones in which the parties agree disputes *may* be brought and is *not* exclusive. *See, e.g., Eisenbud v. Omnitech*, C.A. No. 14695, Steele, V.C., 1996 WL 162245 (March 21, 1996) (forum selection

---

1. Dura cites two other cases in which Delaware courts have treated actions filed on the same day or within a short while of each other as being "contemporaneous" for some purpose. Neither provides a rationale for doing so here. *Draper v. Gardner Defined Plan Trust*, Del.Supr., 625 A.2d 859 (1993) involved an issue of voluntary dismissal under Rule 41(a)(2), not a *McWane* motion to stay or dismiss. The Supreme Court affirmed the voluntary dismissal of the Delaware action by plaintiffs who sought to prosecute, instead, identical derivative actions filed by their lead counsel in California the same day as the Delaware action was filed. It was in this context that the Supreme Court rejected the characterization of the Delaware action as "first filed" and referred to the Delaware and California actions as "simultaneously filed actions." *Id.* at 869, n. 15. I do not understand this characterization to have any bearing on the present application.

Similarly, Dura refers to *In re Chambers Development Co., Inc. Shareholders Litigation*, C.A. No. 12508, Chandler, V.C., 1993 WL 179335, at *7 (May 20,1993), as involving "actions filed within two weeks of each other [which] were [found to have been] commenced within the 'same general time period and ... treated as contemporaneous filings.'" *Chambers Development Co.* involved

two representative actions involving the same defendants and the same general set of facts. The Delaware action alleging derivative claims was filed shortly after a federal securities action was begun in the Western District of Pennsylvania but before derivative claims were asserted in that foreign action. Because he was persuaded that the general *forum non conveniens* factors heavily favored a stay of the Delaware action, then Vice Chancellor Chandler found it unnecessary to decide whether to accord the foreign action or the Delaware action "first filed" status for the purpose of *McWane's* comity analysis.

Cases involving multiple representative actions, i.e. class or derivative actions, filed in more than one forum, do not present the same forum selection issues as are present here or are addressed in *McWane*. Where one person seeking to act in a representative capacity chooses to litigate in Delaware and another in a different forum, there is little reason to accord decisive weight to the priority of filing, at least where no prejudicial delay has occurred. Other factors bearing on the convenience of the parties and the interests of Delaware in resolving the dispute will be more important.

2. *See* discussion, *infra*, at p. 931.

clause specifying the Superior Court of Bergen County New Jersey as "the Court having competent jurisdiction over all legal and equitable matters" arising under agreement interpreted as non-exclusive.) The third, given the equal and obvious infancy of both of these non-expedited cases, cannot be analytically significant.

### B. *The Alabama and Delaware Actions Involve Substantially the Same Parties and Issues*

■ The claims asserted in the Alabama and Delaware Actions would appear to arise out of the same transaction or occurrence. In Alabama, Scandipharm alleges that Dura's action in terminating the Merger Agreement was a breach of contract, and that, in so doing, Dura acted in bad faith and intentionally. It seeks an order for specific performance of the Merger Agreement and damages attendant to Dura's alleged breach. Here, Dura seeks the following relief: (Count I) a declaratory judgment that Scandipharm is not entitled to specific performance and that Dura was entitled to terminate the Merger Agreement pursuant to § 9.01(f) thereof; (Count II) specific performance of § 9.02 of the Merger Agreement, which provides, in the event of a termination under § 9.01, that the Merger Agreement "shall become void ... and all rights or obligations of each party ... shall cease...."; (Count III) damages with respect to Scandipharm's alleged fraud in inducing Dura to enter into the Merger Agreement; (Count IV) damages with respect to Scandipharm's alleged equitable fraud in the inducement to contract; and (Count V) damages with respect to Scandipharm's alleged negligent misrepresentation in the inducement to contract.

Counts I and II of Dura's complaint concededly involve the same issues as are raised in the Alabama Action. Dura argues, however, that its tort based claims (Counts III–V) are only "tangentially" related to the contract based claims in the Alabama Action. I disagree, finding that all of the claims pending here and in Alabama are closely related and arise out of the same common nucleus of operative facts. Indeed, while it is for the

Alabama court to decide, it would appear that the claims asserted in the Delaware action were and are compulsory counterclaims in the Alabama Action, within the meaning of Alabama Rule of Civil Procedure ("ARCP") 13(a). Thus, there is certainly a close enough identity of issues between the two actions to implicate the *McWane* comity analysis. As Judge Cooch noted in *Transamerica Corp. v. Reliance Insurance Co.*, Del.Super., C.A. No. 94C–10–221, Cooch, J. (Aug. 13, 1995) slip op. at 16–17, "Delaware courts ... have recognized that all claims arising from a common nucleus of operative facts should be brought in the same court at the same time whenever possible."

■ The parties in the Alabama Action and the Delaware Action are substantially the same, the only difference being that Dura chose not to include Acquisition Sub (which is named as a defendant in the Alabama Action) as a party plaintiff in its Delaware complaint. I do not understand Dura to argue that this omission is of any significance to the analysis of whether the parties to the two actions are sufficiently identical for purposes of *McWane.*

### C. *The Alabama Court is Capable of Doing Prompt and Complete Justice Between the Parties*

■ Dura contends that the Alabama court cannot provide complete and prompt justice between the parties because, it is said, that court lacks personal jurisdiction over Acquisition Sub which, it is further argued, is an indispensable party to Scandipharm's action for specific performance. In support of its "indispensable party" argument, Dura relies on *Ex parte Reliance Ins. Co. v. State Farm Fire & Casualty Co.*, 380 So.2d 266 (Ala.1980), a case holding that, in an action for reformation of an insurance contract, a named beneficiary of the policy was a necessary party. Because that person was amenable to the jurisdiction of the Alabama courts, the Alabama Supreme Court had no occasion to decide whether that person was indispensable under ARCP 19(b), that is whether or not "in equity and good conscience" the suit could proceed in that party's absence.

■ *Ex parte Reliance Insurance Co.* provides little support for the proposition that Acquisition Sub, a transitory corporation formed solely for the purpose of accomplishing the merger, is either necessary (within the meaning of ARCP 19(a)), or indispensable (within the meaning of ARCP 19(b)) to Scandipharm's action for specific performance. Moreover, even if Acquisition Sub were found to be a necessary party to the Alabama Action, its interests in the subject matter of that action are identical to those of its parent, Dura, and will be fully protected by Dura's participation in the action. In the circumstances it would be surprising to conclude, "in equity and good conscience," that Acquisition Sub was an indispensable party to the Alabama Action or that such action should not proceed between Scandipharm and Dura, parties unquestionably before the Alabama court. In any case, it is an argument better presented in the Alabama Court.

■ Unlike some cases in which this Court has refused to stay a later filed Delaware action, this is not a case raising novel or important issues of Delaware law (and, in particular, Delaware corporation law) or arising under a special statutory grant of jurisdiction, such as 8 *Del.C.* § 225. *See Carvel v. Andreas Holdings Corp.*, Del.Ch., 698 A.2d 375 ( 1995) (and cases cited therein). Nor is there any suggestion that Scandipharm brought suit in an unusual or unexpected forum, in order to gain an improper advantage over Dura. On the contrary, Scandipharm filed its action in the county and state in which it maintains its principal executive offices and in which negotiations and other actions associated with the disputed Merger Agreement took place. In the absence of an agreement clearly specifying some other exclusive venue, the venue chosen by Scandipharm is certainly one of the ones the parties must have contemplated would be available for litigation about the Merger Agreement. *See, e.g., Eisenbud v. Omnitech*, C.A. No. 14695, Steele, V.C., 1996 WL 162245 (March 21, 1996).

### D. *Forum Non Conveniens Factors*

■ Dura strenuously argues that, notwithstanding the applicability of *McWane's* comity analysis and the absence of some special circumstance favoring the maintenance of the Delaware complaint or calling into question the fundamental fairness of litigating in the foreign jurisdiction, the Court should still examine traditional *forum non conveniens* factors and deny the motion simply because, it claims, those factors weigh in favor of litigating in Delaware. I disagree. The Delaware law issues involved in this dispute do not appear to be novel or complex, nor do they "implicate[ ] significant issues of Delaware corporate policy" or raise questions "over who will own or control a Delaware corporation." They involve only non-fiduciary derived principles about the interpretation and enforcement of a written contract, albeit a long and complex one. Thus, the fact that Delaware law will apply to the contract based claims does not weigh significantly in the analysis. The other factors urged by Dura, such as ease of access to proof and the availability of compulsory process, as a matter of law, cannot alter the outcome. The question whether Alabama is a relatively more or less convenient forum than Delaware, in the circumstances presented here, cannot raise issues of such importance as to overcome *McWane's* strong preference for confining litigation to the jurisdiction in which it is first brought. Dura is free to argue to the Alabama court that it should dismiss the action before it on grounds of *forum non conveniens,* but it is for that Court, not this one, to determine the issue.

### IV. CONCLUSION

For all of the foregoing reasons, Scandipharm's motion to stay or dismiss is granted. Because it is possible that Dura will move to dismiss the Alabama Action on one or more grounds, this action will be stayed, rather than dismissed, at this time. The order to be entered will require that the parties advise the Court periodically as to the status of the Alabama Action, and will reserve the Court's power to modify the terms of its order either to provide for the dismissal of this action or to lift the stay as may be appropriate. Counsel shall submit an agreed upon form of order.