# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CVR REFINING, LP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. N21C-01-260 EMD CCLD |
| v. | ) | |
| | ) | |
| XL SPECIALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Submitted:  July 7, 2021
Decided: August 11, 2021

*Upon Defendants' Motion to Dismiss, or Alternatively, to Stay*
***DENIED***

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, Alexander M. Sugzda, Esquire, Cohen Ziffer Frenchman & McKenna, New York, New York. *Attorneys for Plaintiffs CVR Refining, LP, CVR Refining GP, LLC, CVR Refining Holdings, LLC, CVR Energy, Inc. and David Lamp*

Herbert Beigel, Esquire, Law Offices of Herbert Beigel, Tucson, Arizona. *Attorney for Plaintiffs Carl C. Icahn and Icahn Enterprises L.P.*

Robert J. Katzenstein, Esquire, Smith Katzenstein & Jenkins LLP, Wilmington, Delaware, Leland H. Jones, Esquire, Chiara Tondi Resta, Esquire, Wiley Rein LLP, Washington, D.C. *Attorneys for Defendant XL Specialty Insurance Company.*

John C. Phillips, Jr., Esquire, David Bilson, Esquire, Phillips McLaughlin & Hall, P.A., Wilmington, Delaware, Michael P. Duffy, Esquire, Scarlett M. Rajbanshi, Esquire, Boston, Massachusetts. *Attorneys for Defendant Twin City Fire Insurance Company.*

John C. Phillips, Jr., Esquire, David Bilson, Esquire, Phillips McLaughlin & Hall, P.A., Wilmington, Delaware, Erica J. Kerstein, Esquire, Robinson & Cole LLP, New York, New York. *Attorneys for Defendant Allianz Global Risk US Insurance Company.*

John C. Phillips, Jr., Esquire, David Bilson, Esquire, Phillips McLaughlin & Hall, P.A., Wilmington, Delaware, Geoffrey W. Heineman, Esquire, Ropers Majeski, P.C. *Attorneys for Defendant Argonaut Insurance Company.*

**DAVIS, J.**

## I.    INTRODUCTION

This insurance coverage dispute is assigned to the Complex Commercial Litigation Division of the Court.  Plaintiffs CVR Refining, LP ("CVR Refining"), CVR Refining GP, LLC (the "General Partner"), CVR Refining Holdings, LLC ("CVR Holdings"), CVR Energy, Inc. ("CVR Energy"), Icahn Enterprises, LP ("IELP"), Carl. C. Icahn, and David L. Lamp (collectively, "Plaintiffs") assert claims against Defendants XL Specialty Insurance Company ("XL"), Twin City Fire Insurance Company ("Twin City"), Allianz Global Risks US Insurance Company ("Allianz"), Argonaut Insurance Company ("Argonaut"), and Allied World National Assurance Company ("AWAC") (collectively, the "Insurers").  Specifically, Plaintiffs allege that: (i) all the Insurers anticipatorily breached insurance policies by denying defense costs coverage for Mr. Icahn, IELP and CVR Energy; (ii) all the Insurers anticipatorily breached the policy by denying coverage of Plaintiffs' indemnity costs; and (iii) the Insurers breached the implied covenant of good faith and fair dealing by refusing to cooperate with Plaintiffs prior to  a mediation or to provide coverage for any settlement reached at that mediation.

The Insurers moved to dismiss, or alternatively, to stay this action under *McWane*[1] (the "*McWane* Motion").  In addition, Plaintiffs moved for summary judgment on Count I of the Complaint (the "Partial SJ Motion").  The Court held a hearing on the *McWane* Motion and the Partial SJ Motion on July 7, 2021.  After the hearing, the Court took both matters under advisement.

For the reasons set forth below, the Court will **DENY** the *McWane* Motion.  The Court will issue a decision on the Partial SJ Motion in a separate opinion at a later date.

---

[1] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970).

## II.    RELEVANT FACTS

### A. THE PARTIES

All five corporate plaintiffs are Delaware entities.  CVR Refining is an oil refiner and marketer of transportation fuels organized as a limited partnership in Delaware.[2]  CVR Refining's principal place of business is Texas.[3]  The General Partner is a Delaware LLC and is an indirectly wholly owned subsidiary of CVR Energy through CVR Holdings.[4]  The General Partner is the general partner of CVR Refining, and has direct responsibility for CVR Refining's business and operation management.[5]  CVR Holdings is a Delaware LLC and is an indirectly wholly owned subsidiary of CVR Energy.[6]  CVR Energy is a Delaware corporation with its principal place of business in Texas.[7]  Finally, IELP is a Delaware limited partnership.[8]

There are two individual plaintiffs—Carl Icahn and David L. Lamp.  Mr. Icahn served as the General Partner's chairman from January 2013 to July 2018, as well as CVR Energy's chairman from June 2012 to July 2018.[9]  At all relevant times, Mr. Icahn, directly or indirectly, wholly owned the general partner of IELP and owned approximately 91% of IELP's outstanding depositary units.[10]  Mr. Lamp has been a director of CVR Energy and the General Partner since January 2018.[11]  Since December 2017, Mr. Lamp has also been the president and CEO of both CVR Energy and the General Partner.[12]

---

[2] Compl. ¶ 11.
[3] *Id.*
[4] *Id.* ¶ 12.
[5] *Id.*
[6] *Id.* ¶ 13.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 15.
[9] *Id.* ¶ 16.
[10] *Id.*
[11] *Id.* ¶ 17.
[12] *Id.*

The Defendants are all insurers. XL is a Delaware corporation with its principal place of business in Connecticut.[13] XL is an insurance company licensed to do business in the state of Delaware.[14] Twin City is an Indiana corporation with its principal place of business in Connecticut and is an insurance company licensed to do business in Delaware.[15] Allianz and Argonaust are Illinois corporations and are licensed to do business in Delaware.[16] Allianz has its principal place of business in Illinois.[17] Argonaust has Texas as its principal place of business.[18] AWAC is a New Hampshire corporation with its principal place of business in New York and is an insurance company licensed to do business in Delaware, among other states.[19]

## B. THE POLICIES[20]

XL issued Executive and Corporate Securities Liability Insurance ELU159007-18 (the "XL Primary Policy" or "Policy") to CVR Energy.[21]

The Policy requires, in part, for XL to advance defense costs:

(C)     Upon the written request of:

       (1)     the Company (or with respect to a Claim or Interview to which Insuring Agreements (A) or (D) apply, an Insured Person), the Insurer will advance Defense Expenses, no later than 60 days after the Insurer's receipt of invoices and any additional information reasonably requested by the Insurer documenting such Defense Expenses, in excess of the applicable Retention, if any, before the disposition of the Claim, Interview or Investigation Demand for which this Policy provides coverage; or

       (2)     an Insured Person with respect to a Claim or Interview to which Insuring Agreements (B) or (C) apply (or would apply but for the

---

[13] *Id.* ¶ 18.
[14] *Id.*
[15] *Id.* ¶ 19.
[16] *Id.* ¶¶ 20 and 21.
[17] *Id.* ¶ 20.
[18] *Id.* ¶ 21.
[19] *Id.* ¶ 22.
[20] The Policies are not directly at issue in the *McWane* Motion. The Court is discussing the Policies in depth to provide context as to the coverage dispute between Plaintiffs and the Insurers.
[21] *Id.* ¶ 26.

Company's failure or refusal to pay Defense Expenses on behalf of such Insured Person), solely in the event that the Company fails or refuses to indemnify the Insured Person for Defense Expenses within 60 days of a written request of the Insured Person, the Insurer will advance Defense Expenses on a current basis, but not later than 60 days, after the Insurer's receipt of invoices and any additional information reasonably requested by the Insurer documenting such Defense Expenses, in excess of the applicable Retention, before the disposition of the Claim or Interview for which this Policy provides coverage, subject in all events to Section VI. General Condition (G) of this Policy.[22]

The Policy sets out the Limit of Liability:

**Item 3. Limit of Liability:**[23]

| (A) $1,000,000 | Maximum Aggregate Sublimit of Liability each **Policy Period** for all **Investigation Demands** |
|---|---|
| (B) $10,000,000 | Maximum Aggregate Limit of Liability each **Policy Period** (including **Defense Expenses**) for all **Loss** from all **Claims**, **Investigation Demands**, and **Interviews**.[24] |

The Policy also specifies the Retentions:

**Item 4. Retentions:**

| $0 | Each **Insured Person** under INSURING AGREEMENT I (A) or (D) |
|---|---|
| $1,000,000 | each **Claim**, other than a **Securities Claim**, under INSURING AGREEMENT I (B) or (C). |
| $1,000,000 | each **Securities Claim** under INSURING AGREEMENT I (B) or (C) |
| $0 | each **Investigation Demand** under INSURING AGREEMENT I (F)[25] |

---

[22] Bourne Decl. Ex. 1 (hereinafter "XL Primary Policy") Endorsement No. 26.
[23] Words in bold appear in bold in the XL Primary Policy.
[24] *Id.* Item 3.
[25] *Id.* Item 4.

Under the XL Primary Policy, XL provided $10 million in coverage in excess of a $1 million retention. Endorsement No. 23, however, provides a higher retention limit for claims arising from mergers and acquisitions:

> . . . solely with respect to any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any: (a) acquisition, assumption, merger, consolidation or otherwise of any entity, asset, Subsidiary or liability described in Section VI General Conditions (D)(1) and (2); or (b) Change in Control, Item 4 of the Declarations is amended to read in its entirety as follows:
>
> Item 4. Retentions
>
> | | |
> |---|---|
> | $0 | each Insured Person under Insuring Agreement I (A) or (D) |
> | $2,500,000 | each Claim, other than Securities Claim, under INSURING AGREEMENT I (B) OR (E) |
> | $2,500,00 | each Securities Claim under INSURING AGREEMENT I (B) OR (C) |
> | $0 | each Investigation Demand under INSURING AGREEMENT I (F)[26] |

Section VI General Conditions (D) concerns conditions related to Mergers and Acquisitions (Changes in Exposure or Control):

> (1)    If during the Policy Period the Company acquires any entity by merger, consolidation or otherwise such that the entity becomes a Subsidiary, coverage shall be provided for any Loss involving a Claim, Interview or Investigation Demand for a Wrongful Act occurring after the consummation of the transaction.
>
> (2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the assets or liabilities so acquired or so assumed as a result of such acquisition, exceed thirty-five percent (35%) of the total assets or liabilities, respectively, of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days or to the Expiration Date, whichever occurs first, for any Loss involving a Claim, Interview or Investigation Demand for a Wrongful Act that occurred after the transaction has been consummated. Coverage beyond such period will be provided only if:
>
> > (a)    the Insurer receives written notice containing full details of the transaction(s); and

---

[26] *Id.* Endorsement No. 23.

(b)     the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.[27]

There are three potentially applicable Insuring Agreements:

(A)     The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Person** during the **Policy Period** for a **Wrongful Act**, except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)     The Insurer shall pay on behalf of the **Company Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** to the extent the **Company** is required or permitted to pay on behalf of the **Insured Persons** as indemnification.

(C)     The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act**.

...[28]

"**Loss**" is a defined term:

> "**Loss**" means damages, judgments, settlements, pre-judgment and post-judgment interest or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) that any **Insured** is legally obligated to pay and **Defense Expenses**, including that portion of any settlement which represents the claimant's attorneys' fees.[29]

The definition of **Loss** also has certain exclusions:

> . . . **Loss** will not include that portion which constitutes:

(3)     any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of the **Company's** securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the

---

[27] *Id.* § VI(D)(1) and (2).
[28] *Id.* § I.
[29] *Id.* § II(O).

Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933);

. . .

(5)     any amount which represents or is substantially equivalent to an increase in the consideration paid, or proposed to be paid, by the **Company** in connection with its purchase of any securities or assets of any person, group of persons, or entity

. . .[30]

"**Defense Expenses**" are defined as:

"**Defense Expenses**" means reasonable and necessary legal fees, expenses and other costs (including experts' fees):

(1)     Incurred in the investigation, adjustment, settlement, defense and/or appeal of any **Claim** . . .[31]

"**Claim**" is defined under Endorsement 25:

Section II Definitions (C)(2) of the Policy is amended to read in its entirety as follows:

(2)     any civil, criminal, judicial, administrative or regulatory proceeding commenced by:

(a)     service of a complaint or similar pleading;

. . .[32]

"**Securities Claim**," by contrast, is defined:

"**Securities Claim**" means a **Claim**, other than an administrative or regulatory proceeding against or investigation of the **Company**:

(1)     made against an **Insured** for any actual or alleged violation of any federal, state or local statute, regulation, or rule or common law regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities, which is:

---

[30] *Id.* §§ II(O)(3) and II(O)(5).
[31] *Id.* § II(F)(1).
[32] *Id.* Endorsement No. 25 (Amend Definition of Claim).

(a)  brought by any person or entity resulting from, the purchase or sale of, or offer to purchase or sell securities of the **Company**; or

(b)  brought by a security holder of the **Company** with respect to such security holder's interest in securities of the **Company**.

. . . [33]

Endorsement No. 42 amends the definition of "**Securities Claim**":

". . .'Securities Claim,' as defined in Section II Definitions (S) of the Policy, is amended to include any Claim, other than an administrative or regulatory proceeding against or investigation of the Company, made against any Insured for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market.[34]

"**Insured**" means the **Insured Persons** and the **Company**.[35]

"**Insured Person**" is defined:

"**Insured Person**" means:

(1)  any past, present or future natural person director or officer, or member or manager of the board of managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States.[36]

Endorsement No. 46 further amends the definition of "**Insured Person**":

(2)  any past, present or future natural person employee or intern of the Company (other than an individual described in (J)(1) above) to the extent any Claim is: (a) a Securities Claim, or (b) made and maintained against both such employee and an Insured Person as defined in (J)(1) above;"[37]

Endorsement No. 23 of the Policy increased the retention to $2.5 million for claims related to Mergers and Acquisitions.

---

[33] *Id.* § II(S)(1).
[34] *Id.* Endorsement No. 42.
[35] *Id.* § II(I).
[36] *Id.* § II(J).
[37] *Id.* Endorsement No. 46.

9

"**Company**" is defined:

> "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to GENERAL CONDITIONS VI (D). The term **Company** shall include any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code or any equivalent provision in any foreign jurisdiction.[38]

> "**Parent Company**" means the entity named in ITEM 1 of the Declarations.[39] ITEM 1

names CVR Energy as the Company.[40]

"**Subsidiary**" is defined:

> "**Subsidiary**" means any entity during any time in which the **Parent Company** holds directly or indirectly:

> (1)    more than fifty percent (50%) of the voting rights or issued share capital of such entity.

> . . .[41]

"**Wrongful Act**" means:

> (1)    any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an **Insured Person** while acting in his or her capacity as such or due to his or her status as such;

> . . .

> (3)    solely with respect to Insuring Agreement (C) of the Policy, any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by the **Company**;

> . . .[42]

The XL Primary Policy also contains an allocation provision:

> If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim**, **Interview** or **Investigation Demand** made

---

[38] *Id.* § II(D).
[39] *Id.* § II(Q).
[40] *Id.* Item 1.
[41] *Id.* § II(T).
[42] *Id.* § II(U).

10

against the **Insured** contains both covered and uncovered matters, or because a **Claim**, **Interview** or **Investigation Demand** is made against both the **Insured** and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of **Loss** that is covered under this Policy and that portion of loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim**, **Interview** or **Investigation Demand** by, the **Insured** and others.[43]

Twin City. Allianz, Argonaut and AWAC issued excess insurance policies (collectively with XL Primary Policy, the "Policies") creating an insurance coverage tower.[44] The Policies follow form to the XL Primary Policy.[45]

## C. THE UNDERLYING ACTIONS

The coverage dispute between Plaintiffs and the Insureds arises out of two putative class action lawsuits. Certain plaintiffs filed a lawsuit against CVR Refining in the Court of Chancery, *In re CVR Refining, LP Unitholder Litigation*, No. 2019-0062-KSJM (the "Delaware Litigation").[46] In addition, certain other plaintiffs initiated a lawsuit in the Southern District of New York, *White Pine Investments v. CVR Refining, LP*, No. 1:20-cv-02863 (the "White Pine Action") (collectively, the "Underlying Actions").[47] The factual allegations of both lawsuits are substantially similar.[48] The Delaware Litigation plaintiffs alleged that CVR manipulated the price of CVR Refining's stock to enable CVR Energy to call the plaintiffs' common units at an artificially depressed price.[49] The plaintiffs in the Delaware Litigation and in the White Pine Action are not parties to this civil proceeding.

---

[43] *Id.* § V(D).
[44] *See* Compl. ¶¶ 41-44.
[45] *See id.*; *see also* Bourne Decl. Exs. 2-5.
[46] Compl. Ex. F
[47] *See id.* ¶ 45.
[48] *Id.*
[49] *Id.* ¶ 46.

The Delaware Litigation complaint names CVR Energy, CVR Refining, CVR Holdings, the General Partner, and Mr. Icahn and various individual directors and officers.[50] The Delaware Litigation alleges breach of contract against the CVR entities, breach of the implied covenant of good faith and fair dealing against the CVR entities, and tortious interference against CVR Energy and Mr. Icahn.[51]

The White Pine Action complaint names as defendants CVR Energy, CVR Refining, CVR Holdings, the General Partner, IELP, and Mr. Lamp.[52] The White Pine Action alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5; and Section 20(a) of the Exchange Act.[53]

Plaintiffs gave notice of the Underlying Actions to the Insurers.[54] On March 25, 2019, XL contacted CVR Energy regarding coverage.[55] XL stated the Delaware Litigation constituted a **Claim** against **Insured Persons** for **Wrongful Acts** and constituted a **Securities Claim** against CVR Energy, CVR Refining, CVR Holdings and the General Partner.[56] XL denied coverage as to Mr. Icahn and IELP.[57]

#### D. THE INSURERS DENY COVERAGE.

Mediation for the Delaware Litigation was scheduled for February 17, 2021.[58]

On January 8, 2021, XL sent a letter to CVR Energy, noting that coverage may not be available in the Delaware Litigation.[59] First, XL argued that the "relief sought in the Litigation

---

[50] *Id.* ¶ 51.
[51] *Id.* ¶ 52.
[52] *Id.* ¶ 53.
[53] *Id.* ¶ 54.
[54] *Id.* ¶ 55.
[55] *Id.* ¶ 56.
[56] *Id.*
[57] *Id.*
[58] *Id.* ¶ 57.
[59] *McWane* Mot. Reply Br. Ex. K (January 8 XL Letter).

may not constitute covered **Loss**" because (1) the damages are based solely on contractual obligations, (2) it is "any amount which represents or is substantially equivalent to an increase in the consideration paid, or proposed to be paid, by the **Company** in connection with its purchase of securities or assets of any person, group of persons, or entity," and (3) the amount may be uninsurable under Texas law.[60] Furthermore, XL took the position that coverage was unavailable for IEP and Mr. Icahn because IELP was not an **Insured** and that Mr. Icahn was not being sued in his capacity as an **Insured Person**.[61]

On January 15, 2021, CVR Energy responded, setting out its position on why there was coverage under the Policies.[62] CVR requested that XL confirm by February 3, 2021 that XL "will provide coverage for any settlement reached at mediation…scheduled for February 17, 2021."[63] Instead of responding to the January 15, 2021 letter, the Insurers filed suit in Texas.

### E. PROCEDURAL POSTURE

The Insurers filed a petition in Texas District Court on January 27, 2021 (the "Texas Action").[64] The Insureds then filed the Complaint in this litigation on January 30, 2021 seeking recovery for (1) anticipatory breach of contract regarding the Insurers' denial of coverage for defense costs to Mr. Icahn, IELP, and CVR Energy; (2) anticipatory breach of contract for denying indemnity costs; and (3) breach of the implied covenant of good faith and fair dealing.[65]

---

[60] *Id.*
[61] *Id.*
[62] *McWane* Mot. Op. Br. at 9.
[63] *McWane* Mot. Reply Br. Ex. L (January 15 CVR Letter)
[64] *McWane* Mot. Op. Br. Ex. A (Insurers' Texas Petition).
[65] D.I. No. 1.

The Insureds moved for partial summary judgment on XL's duty to advance defense costs on March 12, 2021.[66] The Insurers moved to dismiss, or alternatively, to stay the action under *McWane* on April 9, 2021.[67] The parties oppose the respective motions.

The Court held a hearing on the *McWane* Motion on July 7, 2021. The Court understands that Texas District Court will hold a hearing on outstanding motions in the Texas Action in mid-August.

### III.    PARTIES' CONTENTIONS

The Insurers argue that this action should be dismissed in favor of the first-filed Texas Action, which involves the same parties and same coverage dispute. The Insurers argue that the Texas Action is first-filed because this civil proceeding was filed as a reaction to the Texas Action.

Plaintiffs argue that this action and the Texas Action are contemporaneously filed and that traditional *forum non conveniens* analysis should apply. Plaintiffs further contend that the Insurers cannot demonstrate that it would be an overwhelming hardship and inconvenience to litigate in Delaware. As such, Plaintiffs claim that the Court should not dismiss the case under the traditional *forum non conveniens* rules.

The Court notes that, at present, there are four separate actions filed involving four different courts and three different states. As remarked at the July 7, 2021 hearing, judicial economy would have been best served through a traditional intervention in the Delaware Litigation or the White Pine Action for purposes of determining coverage.

---

[66] D.I. No. 24.
[67] D.I. No. 30.

14

## IV. STANDARD OF REVIEW

The granting of dismissal or a stay rests within the sound discretion of the trial court.[68] Dismissal under *forum non conveniens* is drastic relief and only warranted in "rare cases."[69] To avoid the plaintiff's choice of forum, a defendant must show "with particularity that it will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware."[70] A defendant must show that the inconvenience and hardship are so profound that they "overwhelm" the plaintiff's choice of forum.[71] It is intended as "a stringent standard that holds defendants who seek to deprive of a plaintiff of her chosen forum to an appropriately high burden."[72]

When determining whether a suit should be stayed or dismissed for *forum non conveniens*, Delaware applies different standards depending on the circumstance.[73] If the foreign action is first-filed, the Court will conduct an analysis under *McWane*.[74] Under *McWane*, Delaware courts generally defer to a case filed first in time in another forum if that action involves substantially the same parties and issues as the litigation pending in Delaware.[75] But, if two cases are filed contemporaneously, the Delaware case is filed first or there is no other pending action, the Court examines the motion under the traditional *forum non conveniens* framework, applying the factors set forth in *Cryo-Maid* under an "overwhelming hardship" standard.[76]

---

[68] *BP Oil Supply Co. v. Conoco Phillips Co.*, 2010 WL 702382, at *2 (Del. Super. 2010).
[69] *See Ison v. E.I. DuPont de Nemours and Co., Inc.*, 729 A.2d 832, 842 (Del. 1999).
[70] *Pipal Tech Ventures Private Ltd. V. MoEngage, Inc.*, 2015 WL 9257869, at *5 (Del. Ch. Dec. 17, 2015).
[71] *Id* at *10.
[72] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1105 (Del. 2014), *as revised* (Mar. 4, 2014).
[73] *See Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036 (Del. 2017).
[74] *See id.*
[75] *BP Oil Supply Co.*, 2010 WL 702382, at *2.
[76] *See Ethica Corp. Finance S.r.L.*, 2018 WL 3954205, at *5 (Del. Super. Aug. 16, 2018).

## V.     DISCUSSION

The Court's decision of whether to apply *McWane* and therefore whether or not to proceed to the *Cryo-Maid* analysis hinges upon whether a prior action was filed.  The Insurers contend that the Texas Action is first filed both as to timing and because this action is reactive to the Texas Action.  The Court does not agree with this legal conclusion.  While the Texas Action was filed three days before this civil proceeding, the Court notes that merely using a timeline is not how to legally analyze the issue.

"Delaware courts have not created a 'bright line' test to determine whether two actions are contemporaneously filed" because that determination is fact-specific to each case.[77] Delaware courts may treat cases that are filed within the same general time frame as contemporaneous.[78]  This is to avoid a situation where the parties "race to the courthouse" to file actions that otherwise indicate independent decision making.[79]  Furthermore, declaratory actions filed in anticipation of the natural plaintiff are not entitled to deference "generally afforded to a first-filed action."[80]

By contrast, if the Delaware action is reactive, Delaware courts will defer to the first-filed suit, even if the competing suits were filed close in time.[81]  A reactive Delaware action will not "succeed in ousting a foreign plaintiff of its choice of forum simply by the speed with which it was filed."[82]  "[S]uch a rule would undermine the very considerations of comity and efficiency

---

[77] *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *2 n. 18 (Del. Super. Jul. 26, 2005).
[78] *See In re Bear Stearns Cos., Inc. Shareholder Litigation*, 2008 WL 959992, at *5 (Del. Ch. Apr. 9, 2008) (finding actions filed contemporaneously when they were "filed in the same general time frame, only three days apart").
[79] *Tex. Instruments Inc. v. Cyrix Corp.*, 1994 WL 96983, at *4 (Del. Ch. Mar. 22, 1994); *see also Dura Pharms., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 929 (Del. Ch. 1998) ("[T]he two complaints were filed within one business day of another . . . an indication of independent decision making").
[80] *Nat. Union Fire Ins. Co. of Pittsburg, PA v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *4 (Del. Super. Dec. 13, 2013).
[81] *See Dura Pharms, Inc.*, 713 A.2d at 929 (Del. Ch. 1998)
[82] *Id.*

16

on which the general rule of *McWane* based, by encouraging a 'race' to file responsive or reactive complaints."[83]  Therefore, if the parties were "free to file suit" for a significant period of time before the purportedly contemporaneous suits were filed, courts are more likely to find the second-filed suit reactive and defer to the first-filed action.[84]

The facts demonstrate that the Insurers engaged in a "race to the courthouse."  Here, the parties negotiated coverage until January 15, 2021.[85]  Plaintiffs set a deadline of February 3, 2021 for the Insurers to take a final position on the February 17, 2021 mediation in the Delaware Litigation.  Instead of continuing discussions with their insureds, the Insurers filed the Texas Action on January 27, 2021.[86]  While Plaintiffs' cause of action may have existed when Insurers refused to cover the claim on January 8, 2021, Plaintiffs did not file suit for a significant amount of time within the context of negotiations.  Without warning, the Insurers, who did not deny coverage until 2021, filed the Texas Action without additional notice to Plaintiffs.  Importantly, Plaintiffs are the natural plaintiffs in this action.[87]  Under these circumstances, the Court will not defer to the Insurers' choice of forum.  Therefore, the Court finds that the actions were filed contemporaneously.  As such, *Cryo-Maid* and not *McWane* governs here.

When two cases are filed contemporaneously, the Court should examine the motion "under the traditional *forum non conveniens* framework, applying the factors set forth in *Cryo-Maid* under an 'overwhelming hardship' standard."[88]  The *Cryo-Maid* factors are (1) the relative ease of access to proof; (2) the availability of compulsory processes for witnesses; (3)

---

[83] *Id.*

[84] *Id.*; *see also Chemtura Corp. v. Certain Underwriters at Lloyd's*, 2015 WL 5340475, at *4 (Del. Super. Aug. 26, 2015) (finding that a second-filed action was reactive when defendants could have filed suit long before plaintiffs).

[85] *See* January 15 CVR Letter.

[86] Insurers' Texas Petition.

[87] *See Lima Delta Co. v. Global Aerospace, Inc.*, 2016 WL 691965, at *4 n.42 (Del. Super. Feb. 19, 2016) ("[Plaintiff] is the insured, and therefore, the "natural plaintiff" in an insurance coverage dispute").

[88] *Ethica Corp. Finance S.r.L*, 2018 WL 3954205, at *5 (Del. Super. Aug 16, 2018).

the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[89]

The Insurers do not argue that the *Cryo-Maid* factors apply, therefore they cannot meet their burden of proof.[90]  Furthermore, the Insurers waived any *Cryo-Maid* argument by failing to assert it in their opening brief.[91]  Even if the Insurers argued under traditional *forum non conveniens* standards, the Court finds that cannot prove overwhelming hardship if forced to litigate in Delaware.  All the Insureds are licensed to do business in Delaware.  XL is a Delaware corporation.  In addition, there is a very good chance that Delaware law will apply to the Policies.[92]

## VI.  CONCLUSION

For all the foregoing reasons, the *McWane* Motion is **DENIED**.[93]

The Court understands that this decision does not help preserve judicial resources. Ideally, the parties would have intervened in either the Delaware Litigation or the White Pine Action for a coverage determination.  This is a commonly accepted practice and one usually welcomed by the courts.[94]  Unfortunately, the Insurers initiated litigation in an entirely new State

---

[89] *See Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198-99 (Del. 1997).
[90] *See Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 36 (Del. 1991) ("The burden [of proof] is imposed upon the moving party . . .").
[91] *See Franklin Balance Sheet Inves. Fund v. Crowley*, 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) ("[A] party is obliged in its motion and opening brief to set forth all of the grounds, authorities and arguments supporting its motion.").
[92] *See RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 896-901 (Del. 2021).
[93] Arguments regarding forum shopping were made at the June 28, 2021 hearing.  The Court disregarded such arguments in making its decision.  The Court firmly believes that both this Court and the Texas District Court can competently and impartially preside over the litigation between the parties.
[94] *See, e.g., Bradley Corp. v. Zurich Ins. Co.,* 984 F.Supp. 1193, 1998 (E.D. Wis. 1997) (parties should move to intervene in primary litigation and request a determination as to coverage).

(Texas as opposed to Delaware or New York) and Plaintiffs filed a fourth lawsuit in this Court. Now four different courts in three different States are involved. This conduct does not preserve scarce judicial resources. Despite this, the Court—applying, as it must, governing Delaware law—has determined that it will not stay or dismiss this civil proceeding.

Dated: August 11, 2021
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress